Attorney Grievance Commission of Maryland v. Spencer Michael Hecht, AG No. 37, September Term, 2024

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Supreme Court of Maryland disbarred from practice of law in Maryland lawyer who, among other misconduct, lost client's signed post-nuptial agreement, concealed from client fact that he lost document, refused to issue timely refund for cost of preparation of document, misrepresented to another client that he was filing motion that he had no intention of filing, filed with trial court expert witness designation falsely stating that expert was preparing report in client's case when he knew that expert was not, signed affidavit for opposing counsel that was harmful to then former client, and made unauthorized charge on another client's credit card.  Such conduct violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.5(a) (Fees), 1.9(c) (Duties to Former Clients), 1.15(a) (Safekeeping Property), 1.16(d) (Terminating Representation), 8.1(b) (Bar Admission and Disciplinary Matters), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct that is Prejudicial to Administration of Justice), and 8.4(a) (Violating MARPC).

Supreme Court reaffirmed holding in Attorney Grievance Comm'n v. Collins, 477 Md. 482, 530, 533-34, 270 A.3d 917, 946, 948 (2022), that standard established in Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 773 A.2d 463 (2001), requires attorney to demonstrate compelling extenuating circumstances to warrant imposition of sanction less than disbarment for misconduct involving intentional dishonesty, and that Court may invoke Vanderlinde standard based on nature, circumstances, and consequences of intentionally dishonest conduct.  Supreme Court concluded that Vanderlinde standard applied and in absence of compelling extenuating circumstances, disbarment was appropriate sanction for respondent's misconduct.

Circuit Court for Montgomery County
Case No. C-15-CV-25-000581

Argued: December 5, 2025

IN THE SUPREME COURT

OF MARYLAND

AG No. 37

September Term, 2024

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

SPENCER MICHAEL HECHT

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Opinion by Watts, J.

_____

Filed:   March 20, 2026

This attorney discipline proceeding involves an attorney who engaged in deceitful and intentional dishonest conduct as well as a variety of other misconduct over a course of time in connection with several matters. The attorney failed to competently and diligently represent two clients in separate family law matters, failed to sufficiently communicate with both clients, failed to refund unearned attorney's fees, and engaged in deceitful and intentional dishonest conduct by misleading the two clients about information concerning the status of their cases and making an unauthorized charge on the credit card of a former client, resulting in harm to all three.

Among other misconduct, Spencer Michael Hecht, Respondent, a member of the Bar of Maryland, lost a client's signed post-nuptial agreement, concealed from and misled the client about the loss of the document, refused to issue a timely refund for the cost of preparation of the document, misrepresented to another client that he would file a motion that he had no intention of filing, filed with the trial court an expert witness designation falsely stating that an expert was preparing a report in the client's case, signed an affidavit for opposing counsel that was harmful to the then former client, and made an unauthorized charge on another former client's credit card. Bar Counsel received a complaint against Mr. Hecht from each of the three clients.

On January 15, 2025, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed a "Petition for Disciplinary or Remedial Action" against Mr. Hecht, charging him with violating Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.5(a) (Fees), 1.9(c) (Duties to Former Clients), 1.15(a) (Safekeeping Property), 1.16(d)

(Terminating Representation), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct that is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MARPC), and Maryland Rule 19-407(a) and (b) (Attorney Trust Account Record-Keeping).

On May 27, 2025, Bar Counsel filed an Amended Petition for Disciplinary or Remedial Action, which added allegations that Mr. Hecht had violated MARPC 8.1(a) and (b) (Bar Admission and Disciplinary Matters).

On January 22, 2025, we designated the Honorable Bradford McCullough ("the hearing judge") of the Circuit Court for Montgomery County to hear this attorney discipline proceeding. On June 30 through July 2, 2025, the hearing judge conducted a hearing. On September 26, 2025, the hearing judge issued an opinion including findings of fact and conclusions of law, concluding that Mr. Hecht had violated MARPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.9(c), 1.15(a), 8.1(b), and 8.4(a) and (c), but had not violated MARPC 1.16(d) or 8.4(d), or Maryland Rule 19-407.[1]

On December 5, 2025, we heard oral argument. For the below reasons, we disbar Mr. Hecht from the practice of law in Maryland.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On December 18, 2002, we admitted Mr. Hecht to the Bar of Maryland. At all relevant times, Mr. Hecht maintained a law office in Montgomery County. Although Mr.

---

[1]The hearing judge did not make a determination as to whether Mr. Hecht violated MARPC 8.1(a).

Hecht had previously practiced in a variety of substantive areas, during the period relevant to the disciplinary proceedings, his practice primarily involved family law.

Before addressing the circumstances of Mr. Hecht's misconduct with respect to each client, the hearing judge made the following finding with respect to Mr. Hecht's credibility:

> [T]he Court found [Mr.] Hecht to be a less than credible witness. His testimony was marked by inconsistencies, evasion, deflection, and deception. His conduct during the representation of his three clients—along with his responses to Bar Counsel and his testimony before this Court—demonstrated an unfortunate character trait by which he says whatever he thinks, at that moment, will avoid conflict or consequences.

### Representation of Jose Juarez[2]

In April 2023, Mr. Juarez retained Mr. Hecht for representation in a divorce action against his wife, Elizabeth Johnson. Mr. Hecht filed a divorce complaint on Mr. Juarez's behalf in the Circuit Court for Montgomery County. At that time, the couple had one minor child and Ms. Johnson was expecting their second child. After the divorce action was filed, Mr. Hecht emailed Ms. Johnson's attorney, advising that Mr. Juarez was willing to work on the marriage and dismiss the complaint for divorce "in exchange for a post-nuptial agreement between him and [Ms. Johnson] identifying everything in their names as non-marital" property.[3]

Mr. Hecht billed Mr. Juarez approximately $2,400 for drafting the post-nuptial agreement. The terms of the post-nuptial agreement included that Mr. Juarez would be the

---

[2]The hearing judge's opinion contains a section labeled "Representation of Jose Juarez" and identifies the first complainant as "Jose Benjamin Juarez Villagrez," whom the hearing judge refers to as "Juarez." To avoid potential confusion, we will refer to the complainant as "Mr. Juarez."

[3]Shortly thereafter, Ms. Johnson obtained new counsel, Pamela West.

sole owner of a home he anticipated purchasing for the couple and their children, and that in the event of divorce, both Mr. Juarez and Ms. Johnson waived any rights to a monetary award, and that Ms. Johnson waived any right to alimony if she relapsed in sobriety and failed to obtain adequate treatment or if there were a judicial finding that she had engaged in domestic violence against Mr. Juarez. The hearing judge found that the "post-nuptial agreement conferred significant benefits to [Mr.] Juarez" and that the "benefits were very important to [Mr.] Juarez."

On August 21, 2023, Mr. Hecht sent Mr. Juarez and Ms. Johnson the post-nuptial agreement, and told them to sign the agreement, have it notarized, and return the signed and notarized agreement to him.[4] The next day, August 22, Mr. Juarez emailed Mr. Hecht stating that he "would like to drop the paper work off tomorrow morning at 9:00 a.m.[,]" and asked Mr. Hecht if that worked for him. That evening, Mr. Hecht responded: "Works for me. See you then." The hearing judge found that, despite Mr. Hecht's testimony to the contrary at the disciplinary hearing, at no point did Mr. Hecht tell Mr. Juarez that he would be unavailable to receive the document the next day at the agreed-upon time of 9:00 a.m.

On August 23, Mr. Juarez arrived at Mr. Hecht's office "[s]hortly before 9:00 a.m." When Mr. Juarez arrived, there was no receptionist at the front desk. Mr. Hecht heard Mr. Juarez arrive, called out from his office, told Mr. Juarez that he was busy, and instructed Mr. Juarez to leave the signed and notarized post-nuptial agreement on the front desk. Mr.

---

[4]By that time, Ms. Johnson had asked Ms. West to withdraw from the case.

- 4 -

Juarez complied and, before departing the office, took a photograph of the agreement on the desk.

The next day, a circuit court case manager emailed Mr. Hecht and Ms. West about the divorce action to ask that they clear dates for a settlement/status conference.  Mr. Hecht responded, stating that he expected "to file a joint stipulation of dismissal . . . based on an agreement signed by the parties[.]"  Ms. West replied that she had not seen the agreement and asked Mr. Hecht to forward it to her office.  Mr. Hecht responded:

> I have not either.  It was dropped off yesterday from the parties after you notified your client of your discharge in writing.  I am unclear if you represent her based on the writings and the filings.  I will send you the document asap.

> You will need to sign any stipulation of dismissal if you are counsel of record.  I will forward to your attention for review and signature along with the agreement very soon.

On August 31, Mr. Juarez emailed Mr. Hecht to ask about the status of the case and why the divorce could not be "cancelled."  Mr. Hecht responded by advising Mr. Juarez that the circuit court had to grant Ms. West's motion to withdraw as Ms. Johnson's counsel and, after that, he would be able to "deal" directly with Ms. Johnson.  On September 19, after Ms. West's appearance had been stricken, Mr. Hecht and Ms. Johnson filed a "Consent Line to Dismiss," dismissing the divorce action.  The hearing judge found that, although Mr. Hecht knew that Mr. Juarez's willingness to dismiss the divorce action was contingent on having a post-nuptial agreement with Ms. Johnson, Mr. "Hecht nonetheless proceeded with dismissing the divorce action even though he had not located the missing agreement."

Approximately one month later, on October 23, Mr. Juarez emailed Mr. Hecht to ask for a final invoice and a copy of the post-nuptial agreement. On November 1, Mr. Hecht responded by telling Mr. Juarez that he could expect a refund of about $940. Mr. Hecht ignored Mr. Juarez's request for a copy of the agreement.

On November 13, Mr. Hecht emailed Mr. Juarez, telling him that a refund check had been mailed and reminding him that a hearing had been scheduled for December 15 on a motion to rescind a final protective order that Mr. Juarez had obtained against Ms. Johnson. The hearing judge found that Mr. Hecht did not tell Mr. Juarez that the agreement was missing and that, at that point, Ms. Johnson's desire to obtain relief from the final protective order could have been used as leverage to get her to sign a replacement agreement.

On the same day, Mr. Juarez responded to Mr. Hecht's email, stating that he was "okay with" rescission of the protective order and asking "if the post nuptial is valid and if [he] need[ed] a copy of it." The hearing judge found that Mr. Hecht continued to conceal from Mr. Juarez that the post-nuptial agreement was missing by replying: "It is valid and I will get you a copy. I believe you bright [sic] in the one signed by you both right?" Mr. Juarez responded immediately by asking for a copy of the post-nuptial agreement. Mr. Hecht replied, "Ok will do."

On November 28, Mr. Juarez emailed Mr. Hecht again, asking for a copy of the post-nuptial agreement. Mr. Hecht did not respond. On December 13, Mr. Juarez emailed Mr. Hecht again requesting a copy of the agreement, and stated:

- 6 -

> Please send me a copy of the signed postnuptial by Elizabeth and I. I left the original copy at your office on August 23 as you requested. I need to have a copy of the signed post nuptial in case it comes in handy.
>
> I have been calling and sending you emails to get this copy since I left them at your office.

(Brackets omitted). Minutes after receiving the email, Mr. Hecht finally admitted that the agreement was missing, writing:

> Hi Ben – we have been trying to find the post-nup that you left at the front desk. I can tell you that I have never seen the document. I did see the photo that you sent me when you dropped it off at the front desk. I am confident that it was not thrown out but [sic] anybody in the office but no one here has ever seen the actual doc. One way to rectify is to execute another one. If this is problematic, we will continue to look. I am not ignoring your calls. We took care of the refund, which I saw was deposited. I was in a meeting when you called this morning. Thanks.

Within an hour, Mr. Juarez responded that he had "mentioned that option" to Ms. Johnson, who said she would not sign another post-nuptial agreement and that she hoped the original document would never be found. Mr. Juarez asked Mr. Hecht to keep looking for the document and advised: "[I]f you can't find it, I would like a reimbursement for drafting the post nuptial." Mr. Hecht replied:

> That is not a reasonable option. You should not have left the post-nup at my office without anyone there to receive it. Looking back at my emails, I offered many days and times when I could receive it directly and discuss it with you. As I said before, if you did drop it off, there is no reason why it should not be in the office. We have spent considerable time looking for the agreement and will continue.

The hearing judge found that Mr. Hecht "rejected [Mr. Juarez's] request for a refund and shifted blame to his client[.]" The hearing judge determined that the record contained no

- 7 -

evidence that supported Mr. Hecht's claim about offering many days and times for Mr.

Juarez to drop off the agreement.

Eight days later, on December 21, 2023, Mr. Juarez emailed Mr. Hecht:

I hope you were able to find the post nuptial document signed.  If not I would please like to ask just a reimbursement for it.  I paid $2,400 for it.  If I knew it was going to be lost at your office I would never brought it in.  Elizabeth keeps saying she won't sign it again.  Now I have to share everything if I get a divorce.

Over a year later, on January 16, 2025, Mr. Hecht mailed Mr. Juarez a refund check

for $2,400, along with a letter stating, in part, that because Mr. Juarez had "informed the

peer review panel that he never kept a copy of the document" he had "decided to refund

the full amount of the fees earned for the services rendered[.]"  (Brackets omitted).[5]  The

mailing was returned, and on June 19, 2025, Mr. Hecht sent another refund check to Mr.

Juarez's new address.

The hearing judge found that as of the date of the opinion, despite efforts to locate

the agreement, Mr. Hecht had not seen the executed post-nuptial agreement.  The hearing

judge found that throughout the disciplinary proceedings Mr. Hecht "tried to deflect blame

onto [Mr.] Juarez by making statements that were either false or half-truths."  The hearing

judge determined that Mr. Hecht's testimony at the disciplinary hearing—that between

August 23 and September 19, 2023, he had advised Mr. Juarez to ask Ms. Johnson to sign

another agreement—"conflicted with other testimony that he gave and was undercut by his

client's testimony and other evidence in the case."  The hearing judge stated that, "[a]s is

---

[5]According to the petition for disciplinary or remedial action, Bar Counsel received a complaint from Mr. Juarez on February 5, 2024.

true for much of [Mr.] Hecht's testimony, the Court finds it not credible and does not believe it."

### Representation of Jackie Greiner

On June 22, 2020, Mr. Hecht entered his appearance on behalf of Jackie Greiner in a pending divorce action in the Circuit Court for Howard County.  Mr. Hecht had been hired to replace Ms. Greiner's immediate prior counsel.  At the time that Mr. Hecht was retained, discovery in the divorce action was closed and, without her knowledge, Ms. Greiner's prior counsel had withdrawn a motion to compel discovery that had been filed by her original attorney.  The hearing judge found that, from the start of Mr. Hecht's representation of Ms. Greiner, she was concerned about obtaining documents she believed were missing from the discovery.[6]

The hearing judge determined that, although Mr. Hecht gave "inconsistent and less than credible testimony" at the disciplinary hearing about the need to file a motion to compel and about advice he had given to Ms. Greiner, Ms. Greiner clearly asked Mr. Hecht to file a motion to compel and Mr. Hecht said that he was working on it.  As support for the determination, the hearing judge found the following.  In an email dated April 14, 2021, Ms. Greiner asked Mr. Hecht for an update on the case "hopefully complete with a Motion to Compel for discovery documents[.]"  Eight days later, Ms. Greiner sent a follow-up email to Mr. Hecht asking if he had filed the motion to compel.  At the disciplinary hearing, Mr. Hecht testified that Ms. Greiner's April 14th email "was delusional.  There was nothing

---

[6]Ms. Greiner had expected her husband to update his discovery responses with more current financial information.

that was being violated in the order regarding documents, and there was no motion to compel to be filed."

In an email dated April 26, 2021, however, Mr. Hecht had advised Ms. Greiner that he was working on a motion to compel and expected it to be filed by mid-week. In the same email, Mr. Hecht advised that he could serve trial subpoenas on third parties to obtain documents for use at trial and that preparing the motion to compel was taking longer to prepare than the subpoenas.[7]

The hearing judge determined that, in "yet another inconsistency," on July 10, 2020, shortly after he entered his appearance in the case, Mr. Hecht advised Ms. Greiner that he was "preparing a deficiency letter to Kruger [opposing counsel] to get additional documents. If not provided, along with the expert docs needed, we will renew the motion to compel which was withdrawn by prior counsel without your approval." (Brackets in original). The hearing judge found that "[a]mazingly," at the disciplinary hearing, Mr. Hecht testified that he had "no idea" why he told Ms. Greiner he was working on a motion to compel because he never intended to file a motion to compel, and that on the day he first met Ms. Greiner, he told her that he was not going to file a motion to compel.

For Ms. Greiner's case, Mr. Hecht engaged a person named Dan Chaney as an expert in the areas of business valuation, income determination, alimony analysis, and tax

---

[7]The hearing judge found that Mr. Hecht's associate had prepared "either eleven or thirteen subpoenas to financial institutions in late April 2021," and Mr. Hecht billed Ms. Greiner $2,100 for preparation of the subpoenas. During a statement under oath with Bar Counsel, however, when asked why he had subpoenaed financial documents if he already had all of the discovery, Mr. Hecht responded that Ms. Greiner demanded it, that he "didn't need the stuff[,]" and that it was all work for nothing.

consequences of alimony.  Ms. Greiner paid $5,000 to retain Mr. Chaney and believed that Mr. Chaney would prepare an expert report.  On July 9, 2020, Mr. Hecht filed an expert witness designation with the court on Ms. Greiner's behalf, identifying Mr. Chaney as an expert witness and stating that "Mr. Chaney is in the process of investigation and preparation of a report. . . .  Plaintiff [sic] intends to serve Plaintiff with Mr. Chaney's report as soon as it is complete."  The hearing judge found that emails between Mr. Hecht and Mr. Chaney "neither refer to nor evidence any trial preparation" and "it appears that [Mr.] Hecht did not give [Mr.] Chaney a copy of the opposing expert['s] report."[8]

On May 19, 2021, Ms. Greiner emailed Mr. Hecht, requesting a copy of both experts' reports.  The next day, Ms. Greiner emailed Mr. Hecht, requesting various items from him, including the expert reports.  That evening, Ms. Greiner emailed Mr. Hecht again, requesting the expert reports and reminding Mr. Hecht that he told her that he had received the opposing party's expert witness report and that Mr. Chaney's "financial rebuttal" had been completed.  Ms. Greiner wrote that despite her multiple requests, she still had not received copies of the documents.  The hearing judge found that, despite Ms. Greiner's numerous requests for a copy of the report, Mr. Hecht did not advise Ms. Greiner that Mr. Chaney had not prepared a written report and was not expected to.

---

[8]The hearing judge's findings indicate that the opposing party's expert report was provided to Mr. Hecht on May 12, 2022; however, the exhibit cited by the hearing judge reflects that the opposing party's expert report was actually provided to Mr. Hecht on May 12, 2021.  Mr. Hecht's last billing entry referencing communication with Mr. Chaney was on April 29, 2021.

On May 23, 2021, Ms. Greiner emailed Mr. Hecht bringing to his attention that her emails had gone unanswered, inquiring about the missing discovery, and asking how Mr. Chaney completed a forensic report when no updated discovery had been provided.  On May 24, 2021, Ms. Greiner again emailed Mr. Hecht, "expressing dismay at his continued unresponsiveness and failure to provide requested information, including the expert witness reports[.]"  Approximately twenty minutes later, Mr. Hecht responded, stating that he had been sick, and apologized for the delay.  Mr. Hecht did not address Ms. Greiner's requests for documents and did not inform Ms. Greiner that Mr. Chaney had not prepared a report.

On May 25, 2021, Ms. Greiner again emailed Mr. Hecht, requesting discovery documents and the expert reports.  Mr. Hecht did not respond.  On May 26, Ms. Greiner emailed Mr. Hecht, reiterating her requests for the documents, stating:

> I am coming to your office tomorrow at 2pm to pick up either a completed hard copy of the documents I have been requesting from you ( . . . Mr. Carter's expert report in its entirety, and Mr. Chaney's rebuttal report in its entirety . . . ) or give me all these documents and I will go and copy them myself. . . . The fact that I have emails requesting this information going on for months now is quite telling.  This is completely unacceptable.  To reiterate, I have not received from you ONE page of discovery to add to the information I brought with me from my former attorney.

(Paragraph break omitted).  On May 27, Ms. Greiner went to Mr. Hecht's office, and his associate gave her a copy of the opposing party's expert report and downloaded the discovery files onto a USB drive for her.

On May 17, 2021, Mr. Hecht had filed a motion for a continuance of the trial date, indicating that there were deficiencies in discovery and that Ms. Greiner was "awaiting

documents from ten financial institutions through trial subpoenas." Mr. Hecht asserted that the opposing party had not "provided relevant supplemental documents[]. . . despite [] continued assurances they would be provided[,]" and, that due to the alleged "failure to follow the discovery rules, [Ms. Greiner] issued eleven trial subpoenas."

At the disciplinary hearing, Mr. Hecht testified that the motion for a continuance was based on what Ms. Greiner "wanted [him] to represent" but that he believed a breakdown in communication between him and Ms. Greiner was the "primary basis for the motion to postpone." On May 18, 2021, however, after having filed the motion for continuance, Mr. Hecht had emailed Ms. Greiner about the motion, stating: "There are four different reasons for the continuance . . . no judge, expert report, discovery needed, subpoenas unreturned yet due to lack of discovery." (Ellipsis in original). In the email, Mr. Hecht requested an additional fee deposit of $10,000 from Ms. Greiner.[9] Ms. Greiner responded by complimenting Mr. Hecht's work on the motion.[10]

---

[9]In the email, Mr. Hecht stated that there was an attorney's fees claim in the case that could "easily be reimbursed by" Ms. Greiner's ex-husband. The hearing judge noted that, on May 16, 2017, the Commission had reprimanded Mr. Hecht for violating MARPC 1.4(b) by telling a client that "if we can get him [the opposing party] on adultery (which is likely), he will be paying your attorney's fees." According to the hearing judge, the Commission found that this statement, without an explanation of the discretionary nature of an attorney fee award, "inhibited the client's ability to appropriately consider the escalating costs of litigation and make a reasonably informed decision regarding the course of representation."

[10]The hearing judge found that the May 18th email exchange did not evidence a breakdown in communication between Ms. Greiner and Mr. Hecht. "To the contrary, it reflected a sound working relationship." Although the hearing judge determined that Mr. Hecht and Ms. Greiner's relationship had not broken down at the time that Mr. Hecht filed the motion for continuance, the hearing judge found that, thereafter, the "relationship quickly soured."

On May 27, 2021, Mr. Hecht sent Ms. Greiner the opposition to the motion for continuance. Ms. Greiner responded: "I reread Kruger's response to your motion for continuance. This really looks bad and you have put me in a very bad place. It appears that you have failed at even doing the basics – and no report from Mr. Chaney given to Kruger? That was a $5,000 report."

Trial was scheduled to begin on June 1. The hearing judge found that on May 31, Ms. Greiner and Mr. Hecht engaged in a "testy e-mail exchange[.]" On May 31, the night before trial, Ms. Greiner emailed Mr. Hecht, advising of her expectation to receive 19 categories of documents before trial, including Mr. Chaney's report. In an email, Mr. Hecht advised Ms. Greiner that if she did not sign a counterclaim that he had prepared, he would likely move to withdraw "considering the inability to work and communicate with [her] (among other things)." On the morning of trial, Ms. Greiner sent two emails to Mr. Hecht asking whether he was still her attorney and again seeking Mr. Chaney's expert report and other documents. Before the start of trial, Ms. Greiner sent Mr. Hecht one more email, which included another request for Mr. Chaney's "long overdue" report.

During a hearing, before the start of the trial, Mr. Hecht informed the court that he needed to withdraw as Ms. Greiner's counsel due to a "breakdown in communication" with Ms. Greiner. Ms. Greiner advised the court that she had been seeking discovery information from Mr. Hecht for months to no avail. Ms. Greiner also stated that she had spent $5,000 for a report from Mr. Chaney and that she had asked Mr. Hecht for the last several months to send her the report, but that she did not "even know if it exists." Mr. Hecht blamed Ms. Greiner, advising the court: "And as for our expert, he has been totally

- 14 -

ostracized by Ms. [Greiner] as well to the point where he contacted me on Friday night with serious questions about whether he could proceed as the expert in the case."  The hearing judge found that in his remarks to the court, Mr. Hecht did not disclose whether Mr. Chaney was ever expected to prepare a written report or why he had not responded to Ms. Greiner's repeated inquiries as to the status of the report.

The court granted Mr. Hecht's request to withdraw as Ms. Greiner's counsel.  The court also granted Ms. Greiner's request for a continuance of the trial date, conditioned on her paying Mr. Kruger, her husband's attorney, $9,000 as compensation for time spent preparing for the now-continued trial.  The hearing judge found that Mr. Hecht had not advised Ms. Greiner that she might be required to pay attorneys' fees if the court granted a motion for a continuance.

Ms. Greiner hired new counsel, Chad Spencer, who attempted to obtain discovery materials from Mr. Hecht.  At the disciplinary hearing, Mr. Spencer testified that he received both paper and electronic files from Mr. Hecht but there were "enormous holes" in what he received.  After trying unsuccessfully to obtain missing documents from Mr. Kruger, Mr. Spencer filed a "Motion for Appropriate Relief," asking the court to compel Mr. Kruger to provide copies of missing documents.

Mr. Kruger filed an opposition to the motion accompanied by an affidavit signed by Mr. Hecht. The affidavit stated, in part, that, "[p]rior to the withdrawal of [his] appearance as counsel for Ms. [Greiner], and throughout [his] representation of her," Mr. Hecht "provided her with all documents that were received in discovery.  This included documents provided by both of my predecessor counsel."  The affidavit stated that the

- 15 -

reason Ms. Greiner needed a postponement was "because of the voluminous documentation she had been provided that she had not yet reviewed." The hearing judge found that Mr. Hecht's "efforts in helping his former opposing counsel oppose his former client's request for relief were successful" as the court denied Mr. Spencer's motion for appropriate relief.

The hearing judge found that Mr. Hecht's "story" about Mr. Chaney and the existence of an expert report changed throughout Bar Counsel's investigation. On March 1, 2024, in a statement under oath, Mr. Hecht testified that Mr. Chaney had produced an expert report that had been provided to Mr. Kruger and was in materials that he had given to Bar Counsel. When asked why, if the report existed, Ms. Greiner never received it, Mr. Hecht accused Ms. Greiner of being untruthful. After the statement under oath, Bar Counsel asked Mr. Hecht to produce both his correspondence with Mr. Chaney about the report and the correspondence in which he provided Mr. Chaney's report to Mr. Kruger. Mr. Hecht did not respond to either request.

The hearing judge found that in his answer to the petition for disciplinary or remedial action, Mr. Hecht "changed his account" and contended that "Mr. Chaney did not produce a report because his opinions were consistent with the Husband's position as to his income and non-marital assets." The hearing judge found that in an amended answer to an interrogatory, Mr. Hecht's "recollection shifted yet again." In the amended answer to interrogatory number 7, Mr. Hecht stated that he "now recalled" receiving only a draft report from Mr. Chaney. The hearing judge determined that, in the amended answer, Mr. Hecht had asserted "under oath" that there was never a final report but that he received a

- 16 -

"draft written report[,]" which was provided to Ms. Greiner and to Bar Counsel.  The hearing judge found that, at the disciplinary hearing, there was "yet another change[,]" as Mr. Hecht testified that he recently learned Mr. Chaney had not provided him with a draft report.

### Representation of Michael Bonnell

Michael Bonnell retained Mr. Hecht to represent him in a child custody dispute with his ex-wife.  Mr. Bonnell paid Mr. Hecht $10,000 as an initial retainer and, on March 1, 2022, Mr. Hecht entered his appearance in the case on Mr. Bonnell's behalf.  Mr. Hecht billed Mr. Bonnell $11,270 for work performed between February 28 and March 27, 2022. On March 28, 2022, Mr. Hecht sent Mr. Bonnell an email requesting to bill an additional $20,000 and including a link for payment.  The next day, Mr. Hecht sent Mr. Bonnell an e-mail asking: "[C]an we process payment today?"  Mr. Bonnell did not respond to the requests for payment and did not authorize the requested payment.

On March 30, 2022, Mr. Bonnell sent Mr. Hecht an email informing him that he was "changing direction relative to the case" and he had decided to hire new counsel but that he might keep Mr. Hecht "as a strategist and someone [Mr.] Bonnell could 'discuss planning and ideas with.'"  In the email, Mr. Bonnell advised Mr. Hecht that he could "use the card on file to cover the current balance."  The hearing judge found that, as of March 27, 2022, the balance due was $1,270.

At some point before March 31, 2022, without Mr. Bonnell's authorization, Mr. Hecht charged $7,500 to Mr. Bonnell's credit card.  On March 31, Mr. Bonnell emailed Mr. Hecht, stating: "I saw a charge of $7,500.00 come through on my card.  We never

- 17 -

spoke about any authorized charge amount beyond paying the existing balance."  Five minutes later, Mr. Hecht responded:

> There was a balance greater than the last one you saw.  I spent an incredible amount of time on your case this past weekend only to hear that you dont [sic] believe I have the time for your case. . . . You also asked me to stay on in an advisory role and to help you with other matters.  There was a modest replenishment on top of the balance to cover this work.  Nobody is trying to pull a fast one. . . .you wanted all of my time and attention until you didn't anymore. . . . I will send you the updated invoice[.]

(Second ellipsis in original).

On July 7, 2022, Mr. Bonnell emailed Mr. Hecht, asking him to "refund any balances" and to provide "billing support."  Mr. Hecht did not respond to the email.  On January 11, 2023, Mr. Bonnell emailed Mr. Hecht requesting a refund of "all unused amounts."  Mr. Hecht replied that he thought a refund had been "done several months ago[,]" but that he would look into it and be in touch.

At the disciplinary hearing, Mr. Hecht testified that he sent Mr. Bonnell an invoice and refund check on January 27, 2023.  Mr. Bonnell never received either the invoice or the refund check.  On March 26, 2025, after an unsuccessful attempt to resolve the matter using the Bar Association of Montgomery County's Committee on the Resolution of Fee Disputes, Mr. Bonnell entered into a settlement agreement with Mr. Hecht and received $7,000.[11]

---

[11]According to the petition for disciplinary or remedial action, on April 27, 2023, Mr. Bonnell filed a complaint with Bar Counsel.

**Record Keeping**

On June 9, 2025, prior to the date of the disciplinary hearing, the hearing judge granted Bar Counsel's Supplement to Petitioner's Motion to Compel Discovery Responses and ordered that Mr. Hecht produce all ledgers for clients with money in trust from March 28, 2022, through January 27, 2023, and all monthly reconciliations of his IOLTA for the same period. According to the hearing judge, the order was not processed and served through MDEC. On June 30, 2025, when counsel and the parties appeared for the disciplinary hearing, they believed that the court had not ruled on the motion.

Counsel[12] agreed to confer and arrange for production of the materials. According to the hearing judge, after counsel discussed efforts that had been made for Mr. Hecht, through his accountant, to produce responsive records, which were stored electronically,[13] "[i]t was agreed that [Mr. Hecht] would extract whatever documents he could, produce them, and give some testimony." Mr. Hecht produced reconciliations for only six months, March 2022 through August 2022, and one page of one month's general ledger, and gave testimony regarding reconciliations for September 2022 through January 2023.

**STANDARD OF REVIEW**

In an attorney discipline proceeding, we review for clear error a hearing judge's findings of fact and review without deference a hearing judge's conclusions of law. See Md. R. 19-740(b)(1), (b)(2)(B); Attorney Grievance Comm'n v. Slate, 457 Md. 610, 626,

---

[12]Mr. Hecht was represented by counsel at the disciplinary hearing.

[13]The hearing judge stated that Mr. Hecht's efforts to gather the documents were "stymied by thunderstorms that cut power to [Mr.] Hecht's computer server."

180 A.3d 134, 144 (2018).  Where neither party excepts to the hearing judge's findings of fact, we may "treat the findings of fact as established[.]"  Md. R. 19-740(b)(2)(A).  We determine whether clear and convincing evidence establishes that an attorney violated an MARPC.  See Md. R. 19-727(c).

## DISCUSSION

### (A) Findings of Fact

Mr. Hecht filed an exception that concerns the hearing judge's findings of fact and conclusions of law as to deceit, which we address below when discussing MARPC 8.4(c). Apart from that, Mr. Hecht has not excepted to any of the hearing judge's findings of fact,[14] and Bar Counsel has not excepted to any.  With the exception of the hearing judge's findings as to deceit, we shall treat the hearing judge's findings of fact as established.  See Md. R. 19-740(b)(2)(A).

### (B) Conclusions of Law

For different reasons, Bar Counsel and Mr. Hecht both have exceptions to the hearing judge's conclusions of law that we address below.

### MARPC 1.1 (Competence) and MARPC 1.3 (Diligence)

#### *The Hearing Judge's Conclusions*

"An attorney shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation

---

[14]At oral argument, representing himself, Mr. Hecht stated: "I don't really raise any exceptions to the first level facts that were found by" the hearing judge.

reasonably necessary for the representation." MARPC 1.1. MARPC 1.3 provides that "[a]n attorney shall act with reasonable diligence and promptness in representing a client."

The hearing judge concluded that Mr. Hecht violated MARPC 1.1 and 1.3 in his representation of Mr. Juarez and Ms. Greiner. The hearing judge concluded that Mr. Hecht failed to provide competent representation and to act with adequate diligence in representing Mr. Juarez because he failed to promptly notify Mr. Juarez that he could not locate the missing post-nuptial agreement. The hearing judge determined that had Mr. Hecht notified Mr. Juarez of the lost agreement prior to the hearing on Ms. Johnson's request to modify the protective order that had been issued against her, a bargaining process could have been used in an effort to "re-obtain [Ms. Johnson's] signature on the agreement." In addition, the hearing judge concluded that Mr. Hecht violated MARPC 1.1 and 1.3 by filing for dismissal of Mr. Juarez's divorce action even though he knew that the post-nuptial agreement could not be found and that Mr. Juarez "did not want to go forward with the divorce in the absence of a post-nuptial agreement."

The hearing judge concluded that Mr. Hecht violated MARPC 1.1 and 1.3 in his representation of Ms. Greiner by, among other things, failing to: (1) communicate with Ms. Greiner; (2) keep Ms. Greiner "accurately informed about the actions he was taking in relationship to the litigation"; and (3) provide Ms. Greiner with requested discovery materials. In addition, the hearing judge concluded that Mr. Hecht misrepresented to Ms. Greiner the status of Mr. Chaney's report.

- 21 -

### *The Parties' Exceptions*

Bar Counsel excepts to the hearing judge not concluding that Mr. Hecht violated MARPC 1.1 and 1.3 with respect to Mr. Bonnell and his attorney trust account record-keeping practices.  For Bar Counsel, the hearing judge's determination that Mr. Hecht failed to "keep Mr. Bonnell reasonably informed about the status of his case[,]" and "comply with Mr. Bonnell's reasonable request for information regarding the status of his retainer and legal fees" in violation of MARPC 1.4(a) and 1.5 warrants the conclusion that Mr. Hecht also violated MARPC 1.1 and 1.3 with the same conduct.  According to Bar Counsel, Mr. Hecht's attorney trust account record-keeping practices failed to comply with Maryland Rule 19-407 and thus violated MARPC 1.1 and 1.3.

For his part, Mr. Hecht excepts to the hearing judge's conclusion that he violated MARPC 1.1 and 1.3 in his representation of Mr. Juarez.  Mr. Hecht contends that, contrary to the hearing judge's conclusion, he took prompt action to attempt to locate Mr. Juarez's lost post-nuptial agreement and therefore did not violate MARPC 1.1 or MARPC 1.3 with respect to the missing agreement.

### *Discussion*

We overrule Bar Counsel's exception to the hearing judge not concluding that Mr. Hecht violated MARPC 1.1 and 1.3 with respect to his representation of Mr. Bonnell and in his attorney trust record-keeping practices.  We agree with Bar Counsel that a hearing judge's conclusion that an attorney has violated MARPC 1.4(a) and 1.5 may support the conclusion that the attorney has also violated MARPC 1.1 and 1.3.  Here, however, the misconduct that resulted in the hearing judge's conclusion that Mr. Hecht violated MARPC

- 22 -

1.4 and 1.5(a) with respect to Mr. Bonnell occurred after the attorney-client relationship had been terminated and, therefore, cannot be the basis of a violation of MARPC 1.1 and 1.3 or MARPC 1.4.

In Attorney Grievance Comm'n v. Zimmerman, 428 Md. 119, 140-41, 50 A.3d 1205, 1218 (2012), we sustained an attorney's exception to the hearing judge's conclusion that she violated Maryland Lawyers' Rules of Professional Conduct[15] 1.3 and 1.4 where the facts underlying the hearing judge's conclusion were based on the attorney's misconduct with a former client. In exceptions filed with this Court, the attorney argued that the attorney-client relationship had been terminated after only a few days and that the subsequent failure to return the client's retainer and to respond to the client about the refund did not support a violation of MARPC 1.3 or 1.4 because, at the time of the alleged misconduct, the person was no longer a client. See id. at 141, 50 A.3d at 1218. We agreed and concluded that there was not clear and convincing evidence that the attorney "showed a lack of diligence or communication in the very short time during which [the person] was her client[,]" and as such, we held that the attorney did not violate MARPC 1.3 and 1.4 and sustained the exception. Id. at 141, 50 A.3d at 1218. We pointed out that "there are specific provisions in the M[A]RPC dealing with [the] return of retainer and former client matters, such as M[A]RPC 1.15 and 1.16[.]" Id. at 141, 50 A.3d at 1218.

---

[15]The MARPC were previously named the Maryland Lawyers' Rules of Professional Conduct, or MLRPC, and before that, the Maryland Rules of Professional Conduct, or MRPC. Effective July 1, 2016, the MLRPC were renamed the MARPC and renumbered without substantive change. Although prior cases reference the MRPC or MLRPC, for consistency, we use "MARPC" throughout the opinion.

In this case, there is not clear and convincing evidence that Mr. Hecht showed a lack of competence and diligence in his representation of Mr. Bonnell in the brief time before Mr. Bonnell terminated the representation. On March 1, 2022, Mr. Hecht entered his appearance in Mr. Bonnell's custody case. On March 28, 2022, Mr. Hecht emailed Mr. Bonnell an invoice reflecting work between February 28 and March 27, 2022, and billing $11,270. Although Mr. Bonnell testified that he was not satisfied with the work that Mr. Hecht performed, the hearing judge made no findings of fact indicating that Mr. Hecht lacked competence or diligence in performing the work or that he failed to communicate with Mr. Bonnell about the work that he billed for on March 28, 2022.

At the disciplinary hearing, Mr. Bonnell testified he had "disengaged"[16] Mr. Hecht before he saw the $7,500 charge "come through" on his credit card on March 31, 2022. Although the hearing judge found only that the unauthorized charge occurred sometime before March 31, 2022, it is clear from Mr. Hecht's March 31st email, responding to Mr. Bonnell's inquiry about the unauthorized charge, that Mr. Hecht made the charge after learning that Mr. Bonnell had terminated his representation. Mr. Hecht making the unauthorized charge and his failure to respond to Mr. Bonnell's requests for information

---

[16]Mr. Bonnell testified that in an email on March 30, 2022, he had "disengaged" Mr. Hecht, but acknowledged that, in the email, he also told Mr. Hecht that he would keep him on as a "strategist" in order to let him down easily. Mr. Bonnell testified, however, that in sending Mr. Hecht the email on March 30, 2022, he had no intention of keeping him on as a lawyer and that, after the email, Mr. Hecht did no further work for him other than preparing the file for new counsel.

about the charge after the representation terminated is misconduct that is appropriately addressed under both MARPC 1.5 and 1.16(d), not MARPC 1.1 and 1.3.[17]

We overrule Mr. Hecht's exception to the hearing judge's conclusion that he violated MARPC 1.1 and 1.3 as to Mr. Juarez. This Court has held that the loss of a client's document or case file constitutes a violation of MARPC 1.1 because "the thoroughness and preparation reasonably necessary for competent representation includes the proper management of case files." Attorney Grievance Comm'n v. Ober, 350 Md. 616, 630, 714 A.2d 856, 863 (1998). MARPC 1.3 may be violated by, among other things, "failing to advance the client's cause or endeavor[,]" and "[n]otably, the same justifications for finding a violation of [MARPC] 1.1 can support a [MARPC] 1.3 violation." Attorney Grievance Comm'n v. Smith-Scott, 469 Md. 281, 340, 230 A.3d 30, 64 (2020) (citation modified).

---

[17]In addition, although the circumstances strongly suggest that Mr. Hecht did not maintain records concerning deposits and disbursements of client funds or conduct monthly reconciliations as required by Maryland Rule 19-407 and failing to do so may result in a violation of the Rule and MARPC 1.1 and 1.3, we decline to sustain Bar Counsel's exceptions in that regard. The hearing judge issued an order directing Mr. Hecht to produce all general ledgers, all individual ledgers for clients with money in trust, and all monthly reconciliations for his attorney trust account from March 28, 2022 through January 27, 2023. According to the hearing judge, later, after the parties learned of the order, it was agreed that Mr. Hecht would extract from his computer or computer server whatever documents he could for the hearing and give testimony.

Because the agreement that Mr. Hecht produce whatever records he could negated the requirement that he produce all records as directed by the hearing judge's order, we refrain from sustaining Bar Counsel's exceptions concerning misconduct based on Mr. Hecht's alleged failure to comply with Maryland Rule 19-407, as we cannot rule out the possibility that additional attorney-trust account records exist but were not produced.

- 25 -

Here, Mr. Hecht lost the very document that was essential to protecting Mr. Juarez's interests in his reconciliation with his estranged wife.  By losing the post-nuptial agreement and not immediately notifying Mr. Juarez that the agreement was missing and permitting Mr. Juarez to proceed with the withdrawal of the protective order and dismissal of the divorce action, Mr. Hecht clearly engaged in misconduct that violated MARPC 1.1 and 1.3.[18]

Mr. Hecht has not excepted to the hearing judge's conclusion that he violated MARPC 1.1 and 1.3 in his representation of Ms. Greiner.  In sum, clear and convincing evidence supports the conclusion that Mr. Hecht violated MARPC 1.1 and 1.3 with respect

---

[18]Although not a conclusion reached by the hearing judge, it warrants mentioning that Mr. Hecht's failure to forthrightly and promptly admit to Mr. Juarez that the agreement could not be found and his efforts to cover up the fact that it had been lost prevented Mr. Hecht from competently and diligently taking action to rectify the problem.  The loss of a contract does not mean that the contract does not exist or is not binding.  Although, generally, the content of a writing must be proven by the original, see Md. R. 5-1002, Maryland Rule 5-1004(a) provides that "[t]he contents of a writing . . . may be proved by evidence other than the original if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith[.]"  Although we cannot say with certainty that Mr. Juarez would have succeeded in proving the contents of the postnuptial agreement by other means, the record suggests such a possibility.  First, there is the transmittal email from Mr. Hecht to Mr. Juarez and Ms. Johnson with the final version of the agreement.  Second, presumably Mr. Juarez could have testified to the specific version of the agreement that both parties signed.  Third, given that the parties had their signatures notarized as Mr. Hecht instructed, the notary could confirm that Ms. Johnson signed such a document.  Thus, it seems reasonable to conclude that Mr. Juarez might have been able to prove the contents of the signed agreement.  But even if Mr. Juarez would not have been successful in such an effort, for our purposes it does not matter.  What matters is this: Mr. Hecht's failure to disclose the problem to Mr. Juarez prevented him from trying to work with Mr. Juarez to solve it, and Mr. Hecht's failure to work with Mr. Juarez to solve the problem was another failure of competence and diligence.

to both Ms. Greiner and Mr. Juarez, but not with respect to his representation of Mr.

Bonnell and his attorney trust account record-keeping practices.

**MARPC 1.4(a) and (b) (Communication)**

*The Hearing Judge's Conclusions*

In its entirety, MARPC 1.4 states:

(a) An attorney shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0(g) (1.0), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Attorneys' Rules of Professional Conduct or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge concluded that Mr. Hecht violated MARPC 1.4 in his

representation of Mr. Juarez, Ms. Greiner, and Mr. Bonnell, but that he did not violate

MARPC 1.4(b) with respect to Ms. Greiner. The hearing judge determined that Mr. Hecht

violated MARPC 1.4 in his representation of Mr. Juarez, Ms. Greiner, and Mr. Bonnell by

failing to keep each of the three clients reasonably informed about the status of their cases

and by failing to comply with their reasonable requests for information. Although the

hearing judge did not identify the specific provision of MARPC 1.4 that Mr. Hecht's

conduct violated, it is clear that the hearing judge's conclusions pertain to a violation of

- 27 -

MARPC 1.4(a)(2) and (3) with respect to each client, and MARPC 1.4(b) with respect to Mr. Juarez.[19]

The hearing judge concluded that Mr. Hecht did not violate MARPC 1.4(b) by advising Ms. Greiner in an email on May 18, 2021, that "there is an attorney's claim in this case which can easily be reimbursed by [the opposing party.]"  The hearing judge did not address whether any other of Mr. Hecht's misconduct in representing Ms. Greiner violated MARPC 1.4(b).

### The Parties' Exceptions

Bar Counsel excepts to the hearing judge's conclusion that Mr. Hecht did not violate MARPC 1.4(b) with respect to Ms. Greiner.  Bar Counsel argues that Mr. Hecht's failure to keep Ms. Greiner informed that he was not in fact working on a motion to compel and that Mr. Chaney had not prepared an expert report deprived Ms. Greiner of the opportunity to make intelligent decisions regarding her continued employment of him as counsel in violation of MARPC 1.4(b).  Bar Counsel argues that Mr. Hecht also violated MARPC 1.4(b) with respect to Ms. Greiner by failing to reply to Ms. Greiner's request for an explanation about his reference to attorney's fees in the May 18, 2021 email.  Bar Counsel asserts that, by failing to explain what he meant by the reference to the opposing party paying attorney's fees at the same time that he was asking for additional payment from Ms. Greiner, Mr. Hecht violated MARPC 1.4(b) by impairing Ms. Greiner's ability "to

---

[19]The hearing judge concluded that Mr. Hecht failed to explain matters to the extent reasonably necessary to permit Mr. Juarez to make informed decisions regarding the representation, but did not make the same determination as to Mr. Bonnell.

- 28 -

intelligently assess and make an informed decision about whether to continue paying [Mr. Hecht] for his representation in the face of escalating costs[.]"

For his part, Mr. Hecht excepts to the conclusion that he failed to keep Mr. Bonnell informed about the status of his case.  Mr. Hecht argues that the record "lacks any evidence of this" because "the trial court received evidence of the intensive representation that took place for approximately 1 month before Mr. Bonnell moved on to his fourth attorney."

### *Discussion*

We sustain Bar Counsel's exception to the hearing judge not finding that Mr. Hecht violated MARPC 1.4(b) with respect to Ms. Greiner.  We have concluded that an attorney's failure to disclose to a client that, among other things, he had not timely filed a document with the trial court and that document had been returned, deprived the client of the ability to make informed decisions in violation of MARPC 1.4(b).  See Attorney Grievance Comm'n v. Johnson, 450 Md. 621, 644, 150 A.3d 338, 352 (2016); see also Attorney Grievance Comm'n v. Taniform, 482 Md. 272, 307, 286 A.3d 1072, 1092 (2022) (This Court upheld the hearing judge's conclusion that an attorney violated MARPC 1.4(b) by failing to advise his client "that he had not filed the motion to reopen" and making "repeated misrepresentations to the contrary that prevented [the client] from making informed decisions regarding his immigration matter."  (Citation modified)).

In this case, Mr. Hecht's failure to communicate honestly with Ms. Greiner about the work that he was, or was not, performing in her case prevented her from making informed decisions about the case.  Even though Mr. Hecht knew that Mr. Chaney would not produce an expert report and that he was not working on a motion to compel, on May

- 29 -

18, 2021, Mr. Hecht requested that Ms. Greiner pay a $10,000 replenishment of his retainer.[20]  Mr. Hecht withheld important information about the case that prevented Ms. Greiner from making an informed decision about her continued payment of his retainer. On this ground alone, contrary to the hearing judge's analysis, clear and convincing evidence supports the conclusion that Mr. Hecht violated MARPC 1.4(b) with respect to Ms. Greiner.

For the same reasons that we sustained Mr. Hecht's exception to the hearing judge's conclusion that he violated MARPC 1.1 and 1.3 in his representation of Mr. Bonnell, we sustain his exception to the conclusion that he violated MARPC 1.4(a)(2) and (3) as to Mr. Bonnell.

In sum, the hearing judge's conclusions that Mr. Hecht violated MARPC 1.4(a)(2) and (3) in his representation of Mr. Juarez and Ms. Greiner, and MARPC 1.4(b) in his representation of Mr. Juarez, are supported by clear and convincing evidence.  Mr. Hecht has not excepted to the conclusions.  In addition, we conclude that Mr. Hecht violated MARPC 1.4(b) in his representation of Ms. Greiner.

## MARPC 1.5(a) (Reasonable Fees)

### *The Hearing Judge's Conclusions*

MARPC 1.5(a) provides:

---

[20]The email exchange between Mr. Hecht and Ms. Greiner shows that after Mr. Hecht sent Ms. Greiner an invoice and asked her to "make payment of 10K using the link below[,]" Ms. Greiner responded: "I have reviewed the invoice, and it looks good to me, but can you give me until tomorrow to see it with fresh eyes and I will make the payment as requested."

An attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the attorney or attorneys performing the services; and

(8) whether the fee is fixed or contingent.

The hearing judge concluded that Mr. Hecht violated MARPC 1.5 in his representation of all three clients. MARPC 1.5 consists of five sections, labeled (a) through (e). In determining that Mr. Hecht violated MARPC 1.5 as to Mr. Juarez and Ms. Greiner, the hearing judge did not identify a section of MARPC 1.5 that Mr. Hecht violated, whereas the hearing judge determined that Mr. Hecht violated MARPC 1.5(a) with respect to Mr. Bonnell. The hearing judge concluded that Mr. Hecht violated MARPC 1.5 by, among other things, refusing Mr. Juarez's "request to refund his fee" after losing the post-nuptial agreement, and "billing [Ms. Greiner] for work he characterized as useless, frivolous, and unnecessary" and obtaining "an additional $10,000 retainer at a time when he later said the

relationship had broken down." Given that the hearing judge's conclusions with respect to the violation of MARPC 1.5 concern whether Mr. Hecht's actions amounted to collecting an unreasonable fee and that Bar Counsel charged Mr. Hecht with violating MARPC 1.5(a) only and not another section of the rule, it is apparent that the hearing judge determined that Mr. Hecht violated MARPC 1.5(a) in his representation of Mr. Juarez and Ms. Greiner.

### *Mr. Hecht's Exceptions*

Mr. Hecht excepts to the hearing judge's conclusion that he violated MARPC 1.5(a) with respect to Mr. Juarez and Ms. Greiner. Mr. Hecht contends that he attempted to provide Mr. Juarez a refund "on 3 separate occasions[,]" that the additional $10,000 he charged Ms. Greiner occurred before the breakdown in the relationship, and that he completed "necessary and appropriate" work in Ms. Greiner's case.

### *Discussion*

We overrule Mr. Hecht's exceptions. It is plain that Mr. Hecht violated MARPC 1.5(a) by refusing to refund Mr. Juarez the $2,400 that he paid for preparation of the post-nuptial agreement that Mr. Hecht lost. After months of misleading Mr. Juarez about the loss of the agreement, Mr. Hecht informed Mr. Juarez that refunding the money he had paid was "not a reasonable option." The hearing judge's opinion references one attempt by Mr. Hecht after that to mail a refund to Mr. Juarez with a letter dated January 16, 2025, in which Mr. Hecht advised that he "decided" to provide a full refund as a result of Mr. Juarez speaking with the peer review panel. On June 19, 2025, almost two years after Mr. Juarez had returned the signed agreement to Mr. Hecht's office and over a year after Mr.

- 32 -

Juarez filed a complaint with Bar Counsel, Mr. Hecht issued a refund check to Mr. Juarez.[21]

Although the fee may not have been unreasonable at the time it was charged, Mr. Hecht collected and refused to return for a substantial period of time a fee, where as a result of him losing the post-nuptial agreement, the outcome was that he had not provided the promised service.

Mr. Hecht billed Ms. Greiner for work that he had no intention of performing with respect to filing a motion to compel, actively misled Ms. Greiner about the status of the motion, and testified at the disciplinary hearing that filing the motion would have been frivolous.[22]  An attorney billing a client for work that the attorney never intended to do, and that the attorney later characterizes as frivolous, clearly amounts to charging a client an unreasonable fee in violation of MARPC 1.5(a).

The hearing judge's conclusion that Mr. Hecht violated MARPC 1.5(a) in relation to the $7,500 charge on Mr. Bonnell's credit card is also supported by clear and convincing

---

[21]In the petition for disciplinary or remedial action, Bar Counsel stated that a complaint from Mr. Juarez, that had been originally filed with the Attorney General's Consumer Protection Division, was received by the Office of Bar Counsel on February 5, 2024.

[22]In an email dated July 10, 2020, which was admitted into evidence at the disciplinary hearing, Mr. Hecht advised Ms. Greiner that he had attached an updated invoice for work done by the firm and that, in light of ongoing and future work, he asked for authorization to process a payment in the amount of $5,000 with her credit card on file. In the same email, Mr. Hecht advised that he was in the process of preparing a deficiency letter to obtain additional discovery from opposing counsel and that, if not provided, he would "renew the motion to compel which was withdrawn by prior counsel without [Ms. Greiner's] approval."

In addition,  at the disciplinary hearing, Ms. Greiner testified that she paid Mr. Hecht "[r]oughly $40,000[,]" which she described as including "$5,000 I paid our expert" who produced nothing.

evidence.  Mr. Hecht has not excepted to the conclusion.  The hearing judge's conclusion that Mr. Hecht violated MARPC 1.5(a) with respect to each of the three clients in this case is supported by clear and convincing evidence.

### MARPC 1.9(c) (Duties to Former Clients)

#### *The Hearing Judge's Conclusions*

MARPC 1.9(c) provides:

An attorney who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

The hearing judge concluded that Mr. Hecht violated MARPC 1.9 by "voluntarily submitting an affidavit that was clearly disadvantageous to his former client[,]" Ms. Greiner, and that "[t]aking the action [he] took was a serious breach of the duty owed a former client."

#### *Mr. Hecht's Exception*

Mr. Hecht excepts to the hearing judge's conclusion that he violated MARPC 1.9. Mr. Hecht contends, among other things, that the affidavit he signed for former opposing counsel contained "nothing beyond what was placed on the record by Ms. Greiner" as of June 1, 2021.  Mr. Hecht asserts that Ms. Greiner acknowledged that she had received the

- 34 -

case file from his office, and that in the affidavit he did not attest that she had "received the entire file, or everything related to the case."

### Discussion

We overrule Mr. Hecht's exception. Although the hearing judge did not identify a specific section of MARPC 1.9 that Mr. Hecht violated, Bar Counsel charged Mr. Hecht with violating MARPC 1.9(c)(1) and (2), and the hearing judge's findings of fact and conclusions of law substantiate a violation of MARPC 1.9(c)(1) and (2).

Mr. Hecht signed an affidavit,[23] which the MARPC did not require or permit him to sign,[24] containing information about his representation of Ms. Greiner that was not generally known, and which contributed to Ms. Greiner's motion for appropriate relief

---

[23]Although the hearing judge stated, in the findings of fact, that Mr. Hecht did not read the opposition to the motion for appropriate relief before signing the affidavit, Mr. Hecht's exception is not that he was unaware of the content of the affidavit but, rather, that given the information in the affidavit, his signing the document did not constitute a violation of MARPC 1.9. Moreover, the hearing judge did not find that Mr. Hecht failed to read the affidavit itself.

[24]MARPC 1.6(a) provides that "[a]n attorney shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by section (b) of this Rule." MARPC 1.6(b) permits an attorney to "reveal information relating to the representation of a client to the extent the attorney reasonably believes necessary" to, among other things, "prevent reasonably certain death or substantial bodily harm" or "prevent, mitigate, or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the attorney's services[.]" Comment [2] to MARPC 1.6 states that "[a] fundamental principle in the client-attorney relationship is that, in the absence of the client's informed consent, the attorney must not reveal information relating to the representation." (Citation omitted). In this case, Ms. Greiner did not authorize or give informed consent for the disclosure of information relating to the client-attorney relationship and Mr. Hecht was not required to disclose the information contained in the affidavit.

- 35 -

being denied.  With the motion for appropriate relief, Ms. Greiner sought to obtain missing

discovery documents from Mr. Kruger (opposing counsel).  In the affidavit submitted by

Mr. Kruger, Mr. Hecht attested, among other things, that "[p]rior to the withdrawal of my

appearance as counsel for Ms. [Greiner], and throughout my representation of her, I

provided her with all documents that were received in discovery[,]"  and that Ms. Greiner

had said she needed a postponement of the trial date "because of the voluminous

documentation she had been provided that she had not yet reviewed."

At oral argument, despite having filed a written exception indicating otherwise, Mr.

Hecht acknowledged that the affidavit was adverse to Ms. Greiner's interests:

> It was adverse to the client.  Just because something is in the public domain
> . . . right, she said all these things on the record in front of Judge McCrone,
> but just because it's in the public record doesn't mean it's not adverse to the
> client. . . .  But, I shouldn't have done it, in hindsight.  I—I was only stating
> the truth, and it was the truth, but it was adverse to the client.  And, I—I can
> you know . . . there's no dancing around that.  I mean it can be in the public
> sphere and still be adverse to the client.  And I think that that's an
> acknowledgement I need to make that's different than what I filed with the
> Court.  You know as I was preparing today . . . there really is no if, ands, or
> buts about it.

Although Mr. Hecht continues to maintain that information in the affidavit was in the

"public sphere," there is no support in the record for the contention that the information in

the affidavit was generally known.

To be sure, the affidavit was filed as an exhibit to the opposition to the motion for

appropriate relief that was filed on December 16, 2021, six months after the June 1, 2021

hearing, at which Mr. Hecht contends that Ms. Greiner put information contained in the

affidavit on the record.  The hearing judge found, however, that Ms. Greiner's reference at

- 36 -

the June 1st hearing to having received "voluminous documents" pertained to documents that she had been requesting from Mr. Hecht but had only recently received shortly before the trial date. The information in Mr. Hecht's affidavit conveyed the misimpression that Ms. Greiner had access over a period of time to a volume of discovery that she had not read. As such, Mr. Hecht revealed information about his representation of Ms. Greiner that was both disadvantageous to her and not generally known. Ms. Greiner has not acknowledged receiving voluminous discovery from Mr. Hecht throughout the course of his representation. In fact, Mr. Hecht's failure to respond to her requests for discovery materials and other information is an issue that Ms. Greiner raised in the disciplinary proceedings. The hearing judge's conclusion that Mr. Hecht violated both MARPC 1.9(c)(1) and (2) by signing the affidavit is supported by clear and convincing evidence.

### MARPC 1.15(a) (Safekeeping Property)

MARPC 1.15(a) provides:

> An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

The hearing judge concluded that Mr. Hecht violated MARPC 1.15(a) by failing to safeguard Mr. Juarez's signed and notarized post-nuptial agreement. We agree. Clear and convincing evidence supports the hearing judge's conclusion that Mr. Hecht violated

- 37 -

MARPC 1.15(a). That Mr. Hecht may have made subsequent, unsuccessful steps to search for the document does not negate his failure to safeguard it. See, e.g., Attorney Grievance Comm'n v. Lawson, 428 Md. 102, 110, 116, 50 A.3d 1196, 1200, 1204 (2012) (This Court held that an attorney's failure to return the title to a client's van, which had been furnished by the client to the attorney during the representation, "after the representation had concluded was a violation of his duty under M[A]RPC 1.15(a) duty to safeguard the property of clients."); see also MARPC 1.15 cmt. [1] ("All property of clients . . . must be kept separate from the attorney's business and personal property[.]"). Mr. Hecht has not excepted to the hearing judge's conclusion.

### MARPC 1.16(d) (Terminating Representation)

MARPC 1.16(d) provides:

Upon termination of representation, an attorney shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another attorney, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The attorney may retain papers relating to the client to the extent permitted by other law.

The hearing judge concluded that the Commission charged, but failed to prove, a violation of MARPC 1.16(d). Bar Counsel excepts to the hearing judge not concluding that Mr. Hecht violated MARPC 1.16(d) with respect to Mr. Juarez and Mr. Bonnell. Bar Counsel contends that Mr. Hecht violated MARPC 1.16(d) with respect to Mr. Juarez by not providing a timely refund and not returning the signed and notarized post-nuptial agreement after termination of the representation, and with respect to Mr. Bonnell, by making an unauthorized charge of $7,500 on Mr. Bonnell's credit card and not acquiescing

to Mr. Bonnell's request for a refund over a three-year period after the representation ended.  We sustain Bar Counsel's exception.

An attorney may violate MARPC 1.16(d) where a client's documents or unearned fees are not returned or refunded at all or are not returned or refunded in a reasonably timely manner after representation has been terminated.  We have concluded that when an attorney delays in making a full refund of unearned fees to a client until after the client filed a complaint with the Commission, the attorney violates MARPC 1.16(d).  See, e.g., Taniform, 482 Md. at 312-13, 286 A.3d at 1095 (Clear and convincing evidence supported the hearing judge's conclusion that an attorney violated MARPC 1.16(d) by failing to return unearned fees where the attorney "failed to return the funds on his clients' demands and only did so after complaints with the Commission were filed.  Under these circumstances, we cannot find fault with the hearing judge's failure to credit [the attorney] with promptly returning unearned funds to his clients."); Attorney Grievance Comm'n v. Kremer, 432 Md. 325, 336, 68 A.3d 862, 869 (2013) (This Court concluded that an attorney violated MARPC 1.16(d) where the attorney abandoned his clients' cases before their completion, failed to return unearned fees or documents to three clients, and, with respect to a fourth client, returned unearned fees and documents but "did not do so in a timely manner.").

In this case, when Mr. Hecht finally advised Mr. Juarez that the post-nuptial agreement was lost—"after months of evasion and deception"—Mr. Juarez immediately asked for a refund of the $2,400 fee paid for preparation of the agreement.  Mr. Hecht refused to refund the $2,400 and did so only after Bar Counsel received a complaint from

Mr. Juarez, and Mr. Juarez sought assistance from a peer review panel.  In June 2025, almost two years after Mr. Juarez had returned the signed agreement to Mr. Hecht's office on August 23, 2023, Mr. Hecht sent Mr. Juarez a refund.  Mr. Hecht's failure to take reasonably practicable steps to refund Mr. Juarez's payment upon request clearly constitutes a violation of MARPC 1.16(d).

Likewise, despite Mr. Bonnell's repeated requests for a refund, he did not receive repayment until after he attempted unsuccessfully to use the Bar Association of Montgomery County's Committee on the Resolution of Fee Disputes, filed a complaint with Bar Counsel against Mr. Hecht, and eventually entered into a settlement agreement and received $7,000 from Mr. Hecht.  Disputing the need to issue a refund after making an unauthorized charge on a client's credit card is antithetical to taking reasonably practicable steps to protect a client's interests.  We sustain Bar Counsel's exception to the hearing judge's failure to conclude that Mr. Hecht violated MARPC 1.16(d) as to Mr. Bonnell.

### MARPC 8.1(a) and (b) (Bar Admission and Disciplinary Matters)

MARPC 8.1(a) provides in pertinent part that an attorney "in connection with a disciplinary matter, shall not: [] knowingly make a false statement of material fact[.]" MARPC 8.1(b) provides that an attorney shall not:

> fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

The hearing judge concluded that Mr. Hecht violated MARPC 8.1(b) "[b]y failing to promptly correct the misapprehension he knew had arisen" concerning Mr. Chaney

having prepared a report and disclosing to Bar Counsel that Mr. Chaney had not in fact

produced a report.  The hearing judge stated:

> If [Mr.] Hecht's testimony regarding [Mr.] Chaney's report was knowingly
> false at the time it was given at his statement under oath, he violated Rule
> 19-308.1(a).  If he later learned of his error, he was obligated under Rule 19-
> 308.1(b) to disclose that no such report had been produced.  Despite Bar
> Counsel's requests for correspondence related to such a report, [Mr. Hecht]
> failed to make this disclosure until after the Petition for Disciplinary or
> Remedial Action was filed and an Answer was due.  By failing to promptly
> correct the misapprehension he knew had arisen, [Mr. Hecht] violated Rule
> 8.1(b), and the Commission charged him accordingly.  In either event, he
> violated Rule 19-308.1.[25]

On March 1, 2024, Mr. Hecht testified in a statement under oath with Bar Counsel

that Mr. Chaney had "produced a report" and that the report was included in material that

he had previously given Bar Counsel, and that he had also provided the expert report to

Mr. Kruger.  Mr. Hecht did not comply with Bar Counsel's requests that he produce

correspondence about the report.

Over a year later, on March 17, 2025, in his Answer to the petition for disciplinary

or remedial action, Mr. Hecht acknowledged that, in fact, Mr. Chaney had not produced a

report.  Later, during discovery leading up to the disciplinary hearing, however, in an

amended answer to Interrogatory No. 7, Mr. Hecht asserted that he had received "a draft

written report" that had been provided to both Ms. Greiner and Bar Counsel.  At the

---

[25]Despite persuasive evidence that Mr. Hecht knew that Mr. Chaney had not prepared an expert report at the time that he made a statement under oath with Bar Counsel, the hearing judge did not make a clear determination as to whether Mr. Hecht knowingly made a false statement to Bar Counsel in violation of MARPC 8.1(a).  Because neither party has excepted to the hearing judge's conclusions with respect to MARPC 8.1, we will not address the hearing judge's failure to conclude that Mr. Hecht's conduct violated MARPC 8.1(a).

disciplinary hearing, on June 30, 2025, Mr. Hecht testified that Mr. Chaney had not provided a draft report. The hearing judge's conclusion that Mr. Hecht violated MARPC 8.1(b) is supported by clear and convincing evidence.

### MARPC 8.4(c) (Dishonesty, Fraud, Deceit or Misrepresentation)

### *The Hearing Judge's Conclusions*

"It is professional misconduct for an attorney to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" MARPC 8.4(c). We have explained that "[t]he four types of misconduct enumerated in the Rule proscribe a broad universe of misbehavior" and that "[d]ishonesty is the broadest of the four terms, and encompasses, *inter alia*, conduct evincing a lack of honesty, probity or integrity in principle; a lack of fairness and straightforwardness[.]" Attorney Grievance Comm'n v. McDonald, 437 Md. 1, 39-40, 85 A.3d 117, 140 (2014) (citation modified).

In concluding that Mr. Hecht violated MARPC 8.4(c), the hearing judge began by explaining that "[Mr.] Hecht's dealings with each of his clients were fraught with deceit and misrepresentation in violation of Rule 19-308.4(c)." As to Mr. Juarez, the hearing judge concluded that, like the attorney in Attorney Grievance Comm'n v. Reinhardt, 391 Md. 209, 892 A.2d 533 (2006):

> [Mr.] Hecht was also dishonest and misrepresented the truth on multiple occasions when he failed to disclose upon inquiry that he did not have the post-nuptial. Beginning with the inquiry by West, and then between August 2023 through December 2023, he was dishonest either through omission or through intentional misrepresentation when he avoided responding to his client's inquiries about the status of the post-nuptial agreement or when he falsely asserted that he would get his client a copy of the document.

- 42 -

The hearing judge explained that "[n]ot only was [Mr.] Hecht dishonest in his communications with [Mr.] Juarez, but he was dishonest during his March 1, 2024 statement under oath[,]" when among other things, he testified that Mr. Juarez had left the agreement at his office at a time "that was not prearranged or confirmed by him."

The hearing judge concluded that, among other things, Mr. Hecht "affirmatively misrepresented to [Ms.] Greiner that he was in the process of working on a motion to compel discovery." The hearing judge also determined that Mr. Hecht failed to correct Ms. Greiner's misapprehension that Mr. Chaney was retained to produce an expert report.

The hearing judge concluded that Mr. Hecht violated MARPC 8.4(c) by charging $7,500 on Mr. Bonnell's credit card without authorization. The hearing judge explained that, in Smith-Scott, 469 Md. at 361, 230 A.3d at 76, this Court held that an "attorney violated Rule 8.4(c) when she charged her client's credit card $4,986.13 without the client's authorization." The hearing judge pointed out that this Court held in Attorney Grievance Comm'n v. Gracey, 448 Md. 1, 25, 136 A.3d 798, 812-13 (2016), that an "attorney violated Rule 8.4(c) when he withdrew money from his two clients' accounts without their authorization." The hearing judge concluded that Mr. Hecht "engaged in the same or similar conduct" as the attorneys in Smith-Scott and Gracey in making the unauthorized $7,500 charge on Mr. Bonnell's credit card.[26]

---

[26]The hearing judge also concluded that Mr. Hecht was "dishonest and deceitful" in testimony during the disciplinary hearing. An attorney's allegedly false testimony during a disciplinary hearing, however, cannot be the basis of a conclusion that the attorney violated an MARPC within the same attorney discipline proceeding. See Attorney Grievance Comm'n v. Frank, 470 Md. 699, 733, 236 A.3d 603, 624 (2020); In re Ruffalo,

### *Mr. Hecht's Exception*

Mr. Hecht raises an exception that applies both to the hearing judge's findings of fact and conclusions of law concerning the violation of MARPC 8.4(c).  According to Mr. Hecht, the hearing judge's opinion began "with the conclusion that [he] was a deceitful person, and then worked backwards to justify its conclusion."  Mr. Hecht contends that "his actions towards the 3 complainants were far from deceitful" and that he "takes exception to this finding[.]"  Specifically, Mr. Hecht asserts:

As to Mr. Juarez:

- That stating that he was in a meeting at the time that Mr. Juarez arrived at the office was not a reason to find him deceitful.

- That, rather than find that he failed to timely communicate with Mr. Juarez about the missing post-nuptial agreement, the hearing judge concluded that this amounted to deceitfulness and/or misrepresentation.

- That the hearing judge ignored his concessions, remorse, and attempts to refund, and "seemed to hold [them] against [him] under the guise of 'deceitfulness.'"

As to Ms. Greiner:

- That, rather than find that he "simply made a mistake when he testified that a report had been generated and produced to opposing counsel," the hearing judge found him to be deceitful in his testimony.

As to Mr. Bonnell:

---

390 U.S. 544, 551 (1968).  Such a conclusion would violate an attorney's right to procedural due process, as the attorney would have necessarily lacked notice of the allegation prior to the hearing.  See Ruffalo, 390 U.S. at 551 ("The charge must be known before the proceedings commence.  They become a trap when, after they are underway, the charges are amended on the basis of testimony of [the respondent].").  Accordingly, we conclude that Mr. Hecht did not violate MARPC 8.4(c) on the ground that he testified falsely at the disciplinary hearing.

- That the evidence at the disciplinary hearing was that he timely participated in the fee-dispute process, which abruptly ended when Mr. Bonnell filed a complaint with the Attorney Grievance Commission.

## *Discussion*

We overrule Mr. Hecht's exception. We have concluded that "[a]ttorneys violate M[A]RPC 8.4(c) when they misrepresent to their clients the status of their clients' cases, or conceal material information from their clients, even if they have not misrepresented explicitly the information." Attorney Grievance Comm'n v. Thomas, 440 Md. 523, 555, 103 A.3d 629, 648 (2014) (citation omitted). Similarly, we have held that an attorney's omission or concealment of material information about the attorney's misconduct can be dishonest conduct in violation of MARPC 8.4(c). See Attorney Grievance Comm'n v. Silbiger, 478 Md. 607, 629-30, 276 A.3d 53, 66 (2022) (This Court upheld the hearing judge's conclusion that an attorney engaged in dishonest conduct in violation of MARPC 8.4(c) by concealing from his client that he had misappropriated settlement funds, and we noted that the hearing judge stated that there was clear and convincing evidence that the attorney "exhibited a lack of straightforwardness[.]").

Although the hearing judge did not explicitly use the phrase "intentional dishonesty" when referring to Mr. Hecht's deceit, dishonesty, and unauthorized charge of client funds, it is evident that the hearing judge concluded that Mr. Hecht engaged in intentional dishonesty in violation of MARPC 8.4(c) and that the hearing judge's conclusions are supported by clear and convincing evidence. The hearing judge concluded that, in Mr. Hecht's representation of Mr. Juarez, Mr. Hecht "continually conceal[ed] the fact that the post-nuptial agreement was lost. In so doing, [Mr.] Hecht engaged in a deliberate course

- 45 -

of action that resulted in harming the interests of his client in order to minimize his embarrassment and maximize his financial gain." The hearing judge also concluded that, between August and December 2023, Mr. Hecht "was dishonest either through omission or through intentional misrepresentation when he avoided responding to [Mr. Juarez's] inquiries about the status of the post-nuptial agreement or when he falsely asserted that he would get [Mr. Juarez] a copy of the document." The hearing judge's description of Mr. Hecht's misconduct leaves no question that his dishonesty about the post-nuptial agreement was intentional and a part of Mr. Hecht's "deliberate course of action[.]"

Likewise, the hearing judge concluded that Mr. Hecht, among other misconduct, "affirmatively misrepresented to [Ms.] Greiner that he was in the process of working on a motion to compel discovery[,]" and "failed to correct her misapprehension that [Mr.] Chaney was retained to produce an expert report." The hearing judge concluded that Mr. Hecht "initiat[ed] an unauthorized $7,500.00 charge" on Mr. Bonnell's credit card and likened his conduct to that of the attorneys in Smith-Scott and Gracey, cases in which this Court upheld determinations that attorneys violated MARPC 8.4(c) by intentional misappropriation. Clear and convincing evidence supports the hearing judge's conclusion that Mr. Hecht violated MARPC 8.4(c) in his representation of Mr. Juarez, Ms. Greiner, and Mr. Bonnell.[27]

---

[27]In the section of the opinion labeled "Conclusions of Law," the hearing judge wrote in one place that "[t]he Commission charged violations of Rules 19-301.16(d) and 19-308.4(c), but failed to prove those allegations by clear and convincing evidence." Given that the hearing judge made extensive findings concerning Mr. Hecht's violation of MARPC 8.4(c) with respect to each of the three clients, this appears to be a typographical error and was meant to state MARPC 8.4(d).

To the extent that Mr. Hecht's discontentment with the hearing judge's finding of deceitfulness may be considered an exception to the hearing judge's findings of fact, we conclude that the hearing judge's findings of fact with respect to deceit are not clearly erroneous.  "This standard is met where the hearing judge's factual findings are supported by any competent material evidence."  Attorney Grievance Comm'n v. Miller, 467 Md. 176, 194, 223 A.3d 976, 987 (2020) (citation modified).  We have held that an attorney was dishonest and misrepresented the truth, and thus violated MARPC 8.4(c), where the attorney told a client that the attorney was working on the client's case "when, in fact, he had lost the file and was not working on the case at all."  Reinhardt, 391 Md. at 222, 892 A.2d at 540.  Competent evidence adduced at the disciplinary hearing established that, among other misconduct, Mr. Hecht intentionally concealed from Mr. Juarez the loss of his post-nuptial agreement over the course of several months and affirmatively misrepresented to Mr. Juarez that a signed agreement that he had not seen was valid.  Likewise, competent evidence established that Mr. Hecht misrepresented to Ms. Greiner and to the trial court that Mr. Chaney was preparing a report when Mr. Hecht knew that he was not and Mr. Hecht repeatedly misrepresented to Ms. Greiner that he was working on a motion to compel, which he never worked on or intended to file.  And, competent evidence demonstrated that Mr. Hecht made an unauthorized charge on Mr. Bonnell's credit card and failed to respond to Mr. Bonnell's numerous requests for an explanation of the charge.

Although Mr. Hecht gave testimony that provided various explanations for his misconduct, all three of the complainants provided testimony that supports by clear and convincing evidence the hearing judge's conclusion that Mr. Hecht's "dealings with each

- 47 -

of his clients were fraught with deceit and misrepresentation[,]" and violated MARPC 8.4(c). The hearing judge heard, among other witnesses, the testimony of Mr. Juarez, Ms. Greiner, Mr. Bonnell, and Mr. Hecht, and found Mr. Hecht "to be a less than credible witness." Emails between Mr. Hecht and his clients that were admitted into evidence at the disciplinary hearing support the same conclusion.

After hearing testimony over the course of three days and receiving over 70 exhibits from Bar Counsel and 11 exhibits from Mr. Hecht, the hearing judge concluded that Mr. Hecht's testimony was not credible. Consistent with our case law concerning credibility determinations, to the extent that the hearing judge's findings of fact and/or conclusions of law concerning Mr. Hecht engaging in deceptive and intentional dishonest conduct conflict with Mr. Hecht's testimony to the contrary, we defer to the hearing judge's decision not to credit Mr. Hecht's testimony concerning innocent explanations for his misconduct. See Md. R. 19-740(b)(2)(B) ("The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Taniform, 482 Md. at 295-96, 286 A.3d at 1086 ("We defer to the credibility findings of the hearing judge because the hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe[.]" (Citation modified)).

**MARPC 8.4(d) (Conduct that is Prejudicial to Administration of Justice)**

"It is professional misconduct for an attorney to . . . engage in conduct that is prejudicial to the administration of justice[.]" MARPC 8.4(d). "Generally, a lawyer violates M[A]RPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Slate, 457 Md.

- 48 -

at 645, 180 A.3d at 155 (citation modified).

Bar Counsel excepts to the hearing judge's conclusion that Mr. Hecht did not violate MARPC 8.4(d).  Bar Counsel argues that this Court has held that where an attorney engages in conduct that violates MARPC 8.4(c), the attorney's conduct is prejudicial to the administration of justice and also violates MARPC 8.4(d).

We sustain Bar Counsel's exception.  As Bar Counsel points out, this Court has consistently held that an attorney's intentional dishonesty and failure to competently represent a client would negatively impact the perception of the legal profession of a reasonable member of the public and violate MARPC 8.4(d).  See, e.g., Reinhardt, 391 Md. at 222, 892 A.2d at 540-41 ("An attorney's material misrepresentation to the client . . . is conduct prejudicial to the administration of justice.  Failure to represent a client in an adequate manner and lying to a client constitute a violation of Rule 8.4(d)."); Attorney Grievance Comm'n v. McCarthy, 473 Md. 462, 502, 251 A.3d 1059, 1082 (2021) (The attorney's "failures of diligence and communication, as well as his knowing and intentional misrepresentation to [a client], would certainly negatively impact the perception of the legal profession of a reasonable member of the public.").  In this case, although the hearing judge appeared to conclude that the Commission charged a violation of MARPC 8.4(d) but failed to prove the allegation, clear and convincing evidence supports the conclusion that Mr. Hecht's conduct violated MARPC 8.4(d) in a number of ways.

### MARPC 8.4(a) (Violating the MARPC)

"It is professional misconduct for an attorney to[] violate . . . the" MARPC. MARPC 8.4(a).  Clear and convincing evidence supports the hearing judge's conclusion

- 49 -

that Mr. Hecht violated MARPC 8.4(a).  As discussed above, Mr. Hecht violated MARPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.9(c), 1.15(a), 1.16(d), 8.1(b), 8.4(c), and 8.4(d).

### (C) Aggravating and Mitigating Factors

The hearing judge found that the Commission had established by clear and convincing evidence the following aggravating factors: (1) prior disciplinary history; (2) a pattern of misconduct; (3) multiple offenses; (4) bad faith obstruction of the attorney discipline proceeding; (5) a dishonest or selfish motive; (6) the submission of false evidence, false statements, and other deceptive practices during the attorney discipline proceeding; (7) refusal to acknowledge the wrongful nature of the misconduct; and (8) substantial experience in the practice of law.

The hearing judge found that Mr. Hecht did not establish the existence of any mitigating factors.

Bar Counsel excepts to the hearing judge not finding the aggravating factors of indifference to making restitution or rectifying the misconduct's consequences and likelihood of repetition.  Mr. Hecht excepts to the hearing judge not finding any mitigating factors and argues that he "was remorseful and acknowledged his wrongdoing[.]"  We address each of the exceptions below.

### Aggravating Factors

Aggravating factors are, as the name implies, factors that may increase the severity of the sanction that an attorney may receive as a result of engaging in misconduct.  See, e.g., Attorney Grievance Comm'n v. Tabe, 483 Md. 3, 36, 290 A.3d 951, 970-71 (2023) (In determining an appropriate sanction for an attorney's misconduct, this Court considers,

among other things, "aggravating factors[.]"  (Citation modified)).  Bar Counsel bears the

burden of establishing aggravating factors by clear and convincing evidence.  See Attorney

Grievance Comm'n v. Thompson, 462 Md. 112, 131, 198 A.3d 234, 245 (2018) ("The

Attorney Grievance Commission has the burden of proving [aggravating] factors by clear

and convincing evidence."  (Citation omitted)).

> In Slate, 457 Md. at 646-47, 180 A.3d at 156, we stated:
>
> Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

(Citation omitted).

As explained above, the hearing judge found that the Commission established by

clear and convincing evidence eight aggravating factors.  Upon review of the record, we

agree that the hearing judge's findings as to each of the aggravating factors are supported

by clear and convincing evidence.

In addition, we sustain Bar Counsel's exception to the hearing judge not finding

indifference to making restitution or rectifying the misconduct's consequences and

likelihood of repetition as aggravating factors.  This Court has upheld a hearing judge's

finding of the aggravating factor of indifference to making restitution or rectifying the

misconduct's consequences where an attorney failed to promptly refund a client after

- 51 -

completing no meaningful work or engaging in other misconduct related to a client's case. See, e.g., Attorney Grievance Comm'n v. Rossbach, 485 Md. 563, 601-02, 301 A.3d 176, 198-99 (2023) (This Court upheld the hearing judge's finding of indifference to making restitution where the attorney never refunded any portion of a client's $1,600 fee, despite her claims that she would do so, and where the attorney refunded another client's $1,000 fee approximately 18 months after the client terminated the representation and only after the client filed a complaint with Bar Counsel.).

We have concluded that the aggravating factors of indifference to making restitution, refusal to acknowledge the misconduct's wrongful nature, and a selfish motive were present where an attorney offered "a negligible refund" of $1,200 of the $6,200 that his client had paid and "falsely" blamed his client "for his own mistakes[.]" Attorney Grievance Comm'n v. Ucheomumu, 462 Md. 280, 326-27, 200 A.3d 282, 309 (2018). We stated that the attorney "showed indifference to making restitution after he caused the appeal's dismissal" and collected from the client $6,200 that "he never earned or refunded." Id. at 333-34, 200 A.3d at 313. See also Attorney Grievance Comm'n v. Thomas, 445 Md. 379, 400, 127 A.3d 562, 574 (2015) (This Court noted the aggravating factor of indifference to making restitution where an attorney never provided one client or the client's mother with a refund and provided a different client a refund only after she filed a complaint against him with the Commission.).

In this case, Mr. Hecht's failure, and indeed refusal, to provide refunds to Mr. Juarez or Mr. Bonnell until after each client filed a complaint with the Commission and/or sought the intervention of a bar association fee dispute resolution committee demonstrated an

indifference to making restitution or rectifying the consequences of his misconduct.  Based on Mr. Hecht's misconduct, an immediate refund of funds to each of the two clients was plainly warranted.  Mr. Hecht had no defensible position for refusing a refund to Mr. Juarez, given that he lost the signed and notarized post-nuptial agreement, or to Mr. Bonnell, given that he made an unauthorized charge on Mr. Bonnell's credit card.

With respect to the likelihood of repetition of the misconduct, Bar Counsel contends that "[t]he facts found by the [hearing judge] demonstrate a significant likelihood that [Mr. Hecht] will continue to engage in the same or similar types of misconduct[,]" and consideration of the other aggravating factors found by the hearing judge also supports finding the aggravating factor of likelihood of repetition.  We agree.

In Attorney Grievance Comm'n v. Shuler, 454 Md. 200, 220, 231-32, 164 A.3d 209, 220, 227 (2017), we upheld the hearing judge's finding that the aggravating factor of likelihood of repetition of the misconduct was present where the attorney "engaged repeatedly, without regret or apology, in misconduct" and continued "to deny any wrongdoing, blaming instead her client" and others for her misconduct.  The previous suspension of the attorney's license for similar violations "illustrat[ed] further the prospect of [the attorney's] continued transgressions," and led us to conclude that the attorney's "history of violating our rules of professional conduct and lack of remorse or ameliorative action suggests that her continuance of the ability to practice law in Maryland represented a grave risk to the public and the legal profession."  Id. at 232, 164 A.3d at 227-28.  See also Attorney Grievance Comm'n v. Lang, 461 Md. 1, 70, 191 A.3d 474, 515 (2018) (We sustained Bar Counsel's exception to the hearing judge's failure to find that an attorney

- 53 -

was likely to repeat his misconduct and stated that, until the attorney reached an awareness of his duties under the Rules of Professional Conduct, "he is likely to repeat his misconduct.").

Mr. Hecht's misconduct violated numerous MARPC, involved three clients, and spanned a period of several years between 2020 and 2024. Mr. Hecht has previously been reprimanded by the Commission in 2017 and by this Court in 2023 for violations of MARPC 1.4(b) (Communication) and 1.8(a) (Conflict of Interest; Current Clients; Specific Rules) and a violation of MARPC 3.4(c) (Fairness to Opposing Party and Attorney), respectively. The hearing judge found eight aggravating factors, which include bad faith obstruction of the attorney discipline proceeding and the submission of false evidence, making of false statements, or engaging in deceptive practices during the disciplinary process. We conclude that the Commission proved a likelihood of repetition of misconduct by clear and convincing evidence.

### Mitigating Factors

In <u>Slate</u>, 457 Md. at 647, 180 A.3d at 156, we stated:

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the

- 54 -

misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the M[A]RPC; and (14) unlikelihood of repetition of the misconduct.

(Citation omitted).

Mr. Hecht excepts to the hearing judge's failure to find any mitigating factors and asserts that he expressed remorse and acknowledged his wrongdoing.  In support of the exception, Mr. Hecht argues:

- With respect to Mr. Juarez, the hearing judge "ignore[d]" that he conceded violations of MARPC 1.4 and 1.15 and that he attempted to make a refund to Mr. Juarez.

- With respect to Ms. Greiner, at the disciplinary hearing, he testified that he could have done better in communicating with Ms. Greiner and that he should have been much clearer with Ms. Greiner that Mr. Chaney was not going to produce a "rebuttal report."

- With respect to Mr. Bonnell, that the hearing judge ignored that he immediately participated in a fee-dispute process as soon as he was contacted by the Bar Association, that he made "many attempts to refund Mr. Bonnell his remaining funds in escrow[,]" and that he "paid Mr. Bonnell $7,000 to settle the matter[.]"

We overrule Mr. Hecht's exception.  An attorney must prove mitigating factors by a preponderance of the evidence.  See Thompson, 462 Md. at 131, 198 A.3d at 245; see also Md. R. 19-727(c) ("If the attorney asserts an affirmative defense or a matter of mitigation or extenuation, the attorney has the burden of proving the defense or matter by a preponderance of the evidence.").

We have overruled an attorney's exception to the hearing judge's failure to find the mitigating factor of remorse in instances in which attorneys have failed to acknowledge the wrongfulness of their misconduct or blamed clients for their misconduct.  See, e.g., Miller,

467 Md. at 224-26, 223 A.3d at 1004-05 (We concluded that the hearing judge correctly determined that remorse was not a mitigating factor because the hearing judge found that the attorney "consistently blamed" her client for her failure to file an adoption petition and, in this Court, the attorney attempted to "relitigate the facts of her case, largely reiterating arguments that the hearing judge rejected, and still attribute[d] a portion of the blame for her actions on [the client's] failure to pay additional funds.").

Both before and during the disciplinary proceedings, Mr. Hecht blamed his clients for his misconduct. Mr. Hecht refused Mr. Juarez's request for a refund and accused Mr. Juarez of bringing the signed post-nuptial agreement to his office at a time that was not agreed upon. In a statement under oath with Bar Counsel, Mr. Hecht alleged that Ms. Greiner had been untruthful about not receiving an expert witness report, when he knew that no report existed. Mr. Hecht attempted to justify unilaterally making an unauthorized charge on Mr. Bonnell's credit card by claiming that he had done work on the case that he knew he had not.[28]

In his January 16, 2025 letter to Mr. Juarez, Mr. Hecht stated that he "decided" to give Mr. Juarez a refund because Mr. Juarez had informed the peer review panel that he did not have a copy of the agreement. This leads to the conclusion that during the period

---

[28]As to the work performed by Mr. Hecht, an invoice dated January 27, 2023, that was admitted into evidence at the disciplinary hearing, showed that Mr. Hecht billed Mr. Bonnell for only two hours on March 31, 2022, for preparing the file for his new lawyer. The January 27, 2023 invoice showed a charge of one hour for work performed on March 27, 2022 (Mr. Hecht had previously sent Mr. Bonnell an invoice dated March 28, 2022, for work performed prior to that date) and one hour for work performed on April 6, 2022, that consisted of additional work in connection with preparing Mr. Bonnell's file for his new lawyer and which occurred after Mr. Hecht had already made the unauthorized charge.

from August 23, 2023, to January 16, 2025, Mr. Hecht did not make an attempt to provide

Mr. Juarez with a refund and that he did so only after Mr. Juarez's complaint was received

by Bar Counsel and the matter was referred to a peer review panel.

Despite evidence demonstrating that he intentionally misled Ms. Greiner, opposing

counsel, and the trial court about whether Mr. Chaney would prepare or had prepared an

expert report, and misled Ms. Greiner about his intent to file a motion to compel, Mr. Hecht

has never acknowledged the wrongfulness of his conduct or expressed remorse for it.  Mr.

Hecht only agreed to repay Mr. Bonnell after Mr. Bonnell both filed a complaint with Bar

Counsel and sought the assistance of the Bar Association.  Mr. Hecht has not demonstrated

the mitigating factor of remorse by a preponderance of the evidence.

### (D) Sanction

Bar Counsel recommends that we disbar Mr. Hecht.  Mr. Hecht recommends that,

if we find that he violated MARPC 8.4(c), we indefinitely suspend him from the practice

of law in Maryland with the right to reapply for reinstatement after six months.  In the

alternative, Mr. Hecht recommends that, if we do not find that he violated MARPC 8.4(c),

we suspend him from the practice of law in Maryland for two to six months.

In Slate, 457 Md. at 646, 180 A.3d at 155-56, we stated:

This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession.  This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the M[A]RPC that the lawyer violated; (2) the lawyer's mental

- 57 -

state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

(Citation omitted).

In Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 413-14, 773 A.2d 463, 485 (2001), this Court held that, absent "compelling extenuating circumstances," disbarment is the appropriate sanction for "cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like[,]" and established what has been referred to as the "Vanderlinde standard." See, e.g., Attorney Grievance Comm'n v. Malone, 482 Md. 82, 131, 285 A.3d 546, 575 (2022); Miller, 467 Md. at 232 n.19, 223 A.3d at 1009. In Vanderlinde, 364 Md. at 418, 773 A.2d at 488, in concluding that with misconduct involving intentional dishonesty, absent compelling extenuating circumstances, disbarment is the appropriate sanction, we stated that we declined "to distinguish between degrees of intentional dishonesty[.]" We explained that "intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." Id. at 418, 773 A.2d at 488. In Vanderlinde, id. at 413-14, 773 A.2d at 485, we determined that generally where attorney misconduct involving intentional dishonesty is concerned, a sanction less than disbarment may be imposed only upon a showing by the attorney of compelling extenuating circumstances that are the "root cause" of the misconduct and that result in the "attorney's utter inability to confirm [the attorney's] conduct in accordance with the law and with the M[A]RPC."

More recently, in Attorney Grievance Comm'n v. Collins, 477 Md. 482, 529-30, 270 A.3d 917, 945 (2022)—a case involving a violation of MARPC 8.4(c)—we recognized that, since the inception of the Vanderlinde standard, we had not strictly applied the standard in cases of intentional dishonesty.  We concluded that Vanderlinde no longer "*exclusively* set the standard" for determining the sanction for conduct involving intentional dishonesty.  Id. at 529, 270 A.3d at 945.  In Collins, id. at 503-04, 530, 532, 270 A.3d at 930, 946-47, the intentional dishonest conduct at issue consisted of an attorney: (1) during an investigation by Bar Counsel, falsely denying having received a complaint that Bar Counsel later dismissed; and (2) having filed with this Court a petition for reinstatement in which the attorney stated that she had complied with all obligations under former Maryland Rule 19-742 (now Maryland Rule 19-741) and that to the best of her "knowledge, information, and belief" no complaints were pending against her, when, in fact, the attorney had not submitted information to Bar Counsel under former Maryland Rule 19-742[29] and a complaint was pending against her.

---

[29]Former Maryland Rule 19-742(c)(1)(B) required that, within fifteen days after the effective date of the order of discipline, a suspended or disbarred attorney supply Bar Counsel with information about the attorney's current clients and client matters pending in any court.  See Collins, 477 Md. at 499-500, 270 A.3d at 927-28 (citation modified). Maryland Rule 19-742(c)(2)(B) required that, as soon as practicable but within thirty days after the effective date of the order of discipline, a suspended or disbarred attorney "inform current clients, in writing," among other things, that "it may be necessary for the client to obtain another attorney depending upon the status of the client's case or legal matter."  Id. at 500, 270 A.3d at 928 (citation modified).  Maryland Rule 19-742(c)(3)(B) required a suspended or disbarred attorney to file with Bar Counsel within thirty days of the effective date of the order of discipline an affidavit that provided, among other things, the manner in which the attorney had complied with the Rule.  See id. at 500, 270 A.3d at 928.  The relevant provisions of former Maryland Rule 19-742 are now Maryland Rule 19-741(c)(1)(B), (c)(2)(B), and (c)(3)(C), respectively.

As the result of a sanction imposed by the hearing judge, the attorney had been precluded from presenting evidence at the disciplinary hearing, with the exception of evidence as to mitigation. See id. at 490, 270 A.3d at 922. At the disciplinary hearing, as to mitigation, the attorney testified that she had been confused as to whether she was required to submit an affidavit under Maryland Rule 19-742(c)(3)(B) because at the time of her suspension she had only two clients, whom she had already passed on to another attorney. See id. at 498-99, 513, 270 A.3d at 927, 935. The complaint which the attorney denied receiving had been dismissed without explanation by Bar Counsel. See id. at 489, 533, 270 A.3d at 922, 948. Although the attorney engaged in intentional dishonest conduct "by making obvious and inexplicability false statements[,]" we were not persuaded that the sanction of disbarment was warranted. Id. at 533, 270 A.3d at 947-48.

In determining the appropriate sanction, we reviewed post-Vanderlinde case law in which we had imposed a sanction other than disbarment for misconduct involving intentional dishonesty. See id. at 518-29, 270 A.3d at 938-45. We concluded that in numerous attorney disciplinary cases involving intentional dishonesty under MARPC 8.4(c) and knowingly making false statements under MARPC 3.3(a)(1) and 8.1(a), we had not imposed the sanction of disbarment and had not found, pursuant to Vanderlinde, the existence of compelling extenuating circumstances to be the "root cause" of misconduct warranting a lesser sanction. Collins, 477 Md. at 529-30, 270 A.3d at 945. We held:

> Going forward, . . . cases involving dishonesty and knowingly made false statements w[ould] be assessed on an individual basis to determine whether the misconduct at issue gives rise to deployment of the standard set forth in Vanderlinde, namely, whether compelling extenuating circumstances that

- 60 -

are the "root cause" of the misconduct are required to warrant a sanction less than disbarment.

Id. at 530, 270 A.3d at 946.

Our holding in Collins stands for the proposition that this Court has the discretion based on the nature, circumstances, and consequences of the intentional dishonest misconduct at issue to determine whether to invoke the Vanderlinde standard. See id. at 530, 533-34, 270 A.3d at 946, 948. In Collins, id. at 530, 270 A.3d at 946, we discussed a non-exhaustive list of circumstances to be considered in determining whether the Vanderlinde standard applies, which included theft, intentional misappropriation of funds, fraud, harm to a client or third party, or the attorney benefitting or profiting from the misconduct. Although we qualified our holding in Vanderlinde, Vanderlinde has not been overruled. Pursuant to our holding in Collins, in cases involving intentional dishonesty or knowingly made false statements and the like, the first step in deciding the appropriate sanction is a determination as to whether the Vanderlinde standard applies. If the Vanderlinde standard applies, only where an attorney has demonstrated compelling extenuating circumstances that are the root cause of the attorney's misconduct is a sanction less than disbarment warranted. See Collins, 477 Md. at 530, 270 A.3d at 946.[30]

---

[30]Although we have not expressly defined what constitutes a compelling extenuating circumstance, we have discussed circumstances that have been alleged to be such. See Vanderlinde, 364 Md. at 389, 773 A.2d at 470-71. In Attorney Grievance Comm'n v. Bonner, 477 Md. 576, 625, 271 A.3d 249, 279 (2022), where an attorney's misconduct involved misappropriation of funds, after "deploy[ing]" the Vanderlinde standard, we concluded that the attorney's "emotional problems" did not rise to the level of a compelling extenuating circumstance sufficient to preclude disbarment.

In this case, after careful consideration of the nature, circumstances, and consequences of Mr. Hecht's intentional dishonest conduct, we conclude that the Vanderlinde standard applies.   Mr. Hecht's misconduct—which consists of acts of intentional dishonesty with his clients, opposing counsel, and the trial court, and harm to his clients, as well as him benefitting or profiting from the misconduct—aligns with the factors that we discussed in Collins as indicative of when the Vanderlinde standard applies. See Collins, 477 Md. at 530, 533, 270 A.3d at 945-46, 948.  Mr. Hecht has not alleged that there are compelling extenuating circumstances that warrant consideration of a sanction less than disbarment.  See Vanderlinde, 364 Md. at 413-14, 773 A.2d at 485.

Mr. Hecht violated MARPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.9(c), 1.15(a), 1.16(d), 8.1(b), 8.4(c), and 8.4(d), and his misconduct was riddled with deceit and intentional dishonesty.  A non-exhaustive recap of Mr. Hecht's intentional dishonest misconduct and the harm it caused his clients is as follows.  Mr. Hecht not only lost Mr. Juarez's signed post-nuptial agreement but he also deliberately concealed the loss and intentionally misled Mr. Juarez for months by giving the impression that he would provide a copy of the signed agreement and advising Mr. Juarez that the post-nuptial agreement was "valid."   Mr. Hecht's intentional dishonesty deprived Mr. Juarez of the ability to make informed choices about the course of the representation, the dismissal of his divorce action, and the withdrawal of a final protective order.

Mr. Hecht intentionally misrepresented to Ms. Greiner that he would file a motion to compel discovery when he had neither drafted nor filed the motion and had no intention of doing so.  Mr. Hecht engaged in intentional dishonest conduct with Ms. Greiner,

- 62 -

opposing counsel, and the trial court by falsely representing that Mr. Chaney would or had prepared an expert report, when he knew that the expert had not been retained to prepare such a report.  Mr. Hecht deprived Ms. Greiner of the ability to make informed choices about the representation and sought an additional $10,000 retainer from Ms. Greiner while continuing to mislead her about actions being taken on her behalf in connection with the ongoing litigation.

Mr. Hecht engaged in intentional dishonest conduct with respect to Mr. Bonnell by making an unauthorized charge of $7,500 on Mr. Bonnell's credit card and falsely claiming that the charge was for work he had performed.  Although the hearing judge did not make an explicit finding that the unauthorized charge constituted intentional misappropriation, the judge concluded that Mr. Hecht's conduct was the same or similar to attorneys in cases involving the intentional misappropriation of client funds.  See, e.g., Smith-Scott, 469 Md. at 361, 363, 230 A.3d at 76-77 (This Court held that clear and convincing evidence supported the hearing judge's conclusion that the attorney violated MARPC 8.4(c) where, among other things, the attorney charged a client's credit card without the client's authorization and with knowledge that the client disputed the balance and the attorney refused to provide the client with accurate billing statements and "intentionally misappropriated" the client's fees that were not yet earned.).  It is plain that Mr. Bonnell was harmed by the unauthorized charge of funds and the subsequent substantial amount of time and effort it took to for him to recoup money from Mr. Hecht.

Bar Counsel draws our attention to Attorney Grievance Comm'n v. Proctor, 479 Md. 650, 679, 696, 279 A.3d 879, 895, 905 (2022), a post-Collins case in which we

disbarred an attorney who violated MARPC 1.1, 1.2(a), 1.3, 1.4(a) and (b), 1.5(a), 1.16(d), 3.3(a), 5.5(a) and (b), 8.1(a) and (b), and 8.4(a), (c), and (d).  In Proctor, id. at 663-64, 279 A.3d at 886-87, a client retained the attorney to file a civil action, but the attorney never filed the lawsuit, and, over the course of six years, the attorney made intentional misleading statements to the client indicating that litigation was pending.  In determining the appropriate sanction, we concluded that the attorney's "transgressions involve[d] intentional dishonesty[.]"  Id. at 693, 279 A.3d at 903.

We explained that, in Collins, 477 Md. at 530, 270 A.3d at 946, "we analyzed AGC cases post-*Vanderlinde* and observed that disbarment has generally been warranted in cases where intentional dishonest conduct has also been accompanied by 'theft, fraud, harm to a client or third party, or the intentional misappropriation of funds.'"  Proctor, 479 Md. at 694-95, 279 A.3d at 904.  We concluded that disbarment was the appropriate sanction because the attorney's clients lost claims and defenses, paid unreasonable fees, and were deprived of important information necessary to make informed decisions about their cases.  See id. at 695, 279 A.3d at 904.  Invoking the Vanderlinde standard, we concluded that the attorney "failed to demonstrate any compelling extenuating circumstances to justify a sanction less than disbarment."  Id. at 696, 279 A.3d at 904 (citation modified).

In seeking a sanction of less than disbarment, Mr. Hecht draws our attention to Attorney Grievance Comm'n v. Koven, 361 Md. 337, 338, 343, 761 A.2d 881, 881, 884 (2000), a case in which we indefinitely suspended, with the right to apply for reinstatement after two years, an attorney who violated MARPC 1.1, 1.3, 1.4, 1.16(d), 8.1(b), and 8.4(b), (c), and (d).  The attorney was retained by a company and paid $3,000 to file applications

- 64 -

for Alien Labor Certifications[31] for three of its employees.  See id. at 338-39, 761 A.2d at 881.  The attorney did not file the applications.  See id. at 339, 761 A.2d at 881-82.  The attorney "deceived" the company and one of the employees into believing that the employee's application had been filed by showing them altered documents with "false and misleading information" concerning the status of the applications.  Id. at 339, 761 A.2d at 882.  Although we determined that an indefinite suspension was the appropriate sanction for the attorney's violation of  MARPC 8.4(c), see id. at 345, 761 A.2d at 885, Koven predates our holding in Vanderlinde and, as a result, is not instructive.[32]

In addition to violating MARPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.9(c), 1.15(a), 1.16(d), 8.1(b), and 8.4(d), Mr. Hecht violated MARPC 8.4(c) in multiple ways with respect to three clients.  We determine the same eight aggravating factors as the hearing judge.  First, Mr. Hecht has a history of prior discipline.  He was reprimanded in 2017 by the Commission for violating MARPC 1.4(b) and 1.8(a) in connection with giving improper advice concerning attorney's fees, and in 2023, he was reprimanded by this Court

_____

[31]In Koven, 361 Md. at 338, 761 A.3d at 881, although we did not describe what an "Alien Labor Certification" was, currently, the United States Department of Labor has a "permanent labor certification" process, which permits an employer to hire a worker who is not a United States citizen "to work permanently in the United States."  "Permanent Labor Certification," U.S. Dep't of Labor, Emp. and Training Admin., https://www.dol.gov/agencies/eta/foreign-labor/programs/permanent  [https://perma.cc/G78D-SJHE].

[32]Mr. Hecht also draws our attention to two cases that do not involve findings of intentional dishonest conduct: Attorney Grievance Comm'n v. Thompson, 367 Md. 315, 328-29, 786 A.2d 763, 772 (2001), and Attorney Grievance Comm'n v. Black, 362 Md. 574, 575, 766 A.2d 119, 120 (2001).  Although Mr. Hecht asserts that the cases support the imposition of a sanction of less than disbarment, the misconduct involved in the cases did not involve a violation of MARPC 8.4(c) and is in no way similar to Mr. Hecht's misconduct in this case.

for a violation of MARPC 3.4(c).  Second, Mr. Hecht had a dishonest or selfish motive as he actively concealed from Mr. Juarez that he lost the post-nuptial agreement and refused to refund Mr. Juarez's $2,400 even though he knew the agreement could not be found, he billed Ms. Greiner while he misrepresented information concerning the status of her case, and he made an unauthorized charge on Mr. Bonnell's credit card without refunding any of the money until almost three years later.

Third and fourth, Mr. Hecht committed multiple violations of the MARPC and engaged in a pattern of misconduct in his representation of each of the three clients.  Fifth and sixth, Mr. Hecht engaged in bad faith obstruction of the attorney discipline proceeding and the submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceedings, as during the investigation of his misconduct in representing Ms. Greiner, he provided ever-changing and conflicting accounts as to whether an expert report had been prepared.  Seventh, Mr. Hecht has refused to acknowledge the wrongful nature of his misconduct.  Among other things, even though Mr. Hecht knew that he lost the post- nuptial agreement, in response to Mr. Juarez's request for a refund, he "shifted blame to his client[,]" alleging that Mr. Juarez did not come to his office at an agreed-upon time.  Eighth, Mr. Hecht has substantial experience in the practice of law, given that he has been a member of the Maryland Bar since 2002.

As explained, we sustain Bar Counsel's exceptions concerning two additional aggravating factors: indifference to making restitution or rectifying the misconduct's consequences and likelihood of repetition.  The hearing judge found that no mitigating factors exist, and we agree with the finding.

We conclude that the appropriate sanction for Mr. Hecht's misconduct is disbarment. The nature, circumstances, and consequences of Mr. Hecht's misconduct are consistent with that of the intentional dishonest misconduct in post-Vanderlinde and Collins cases in which we have concluded that the Vanderlinde standard applies and imposed the sanction of disbarment. Like the attorney in Proctor, 479 Md. at 695, 279 A.3d at 904, Mr. Hecht "engaged in conduct involving intentional dishonesty" and his "misconduct directly harmed [his] clients[,]" which triggers the Vanderlinde standard. There are no compelling extenuating circumstances that warrant a sanction less than disbarment. In light of the numerous instances and wide range of intentional dishonesty throughout Mr. Hecht's representation of three clients, the harm to the clients, and Mr. Hecht's unwillingness to acknowledge the wrongfulness of his conduct, disbarment is necessary to protect the public.

For the above reasons, we disbar Mr. Hecht from the practice of law in Maryland. The disbarment will be effective immediately.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SPENCER MICHAEL HECHT.**